Testator gave certain shares of stock for life to his wife and his married daughter, and to the survivor of them, and provided that, if his son-in-law survived both, he should have the use of the stock and of the homestead, "to be thereafter disposed of as herein provided." There was a further provision that, on the death of all, the stock should go to certain persons and corporations. . The widow died. *Held*, that the remainder vested at the testator's death, subject only to the life estates.

2. SAME—POWER OF ALIENATION.

   The power of alienation was not suspended for more than two lives in being.

3. SAME.

   Where testator gave certain shares of stock to his wife and married daughter, equally for life, and to the survivor of them, with remainder over, on the death of the widow the daughter was entitled to the income of all the stock.

4. SAME—REMAINDER—DEATH OF LIFE TENANT.

   Under the will, on the death of the wife and the daughter one-half of the principal, whose income the widow had enjoyed, would go to the remainderman, while the son-in-law would have for life the income of the other half.

In the matter of the estate of Tracy W. Conger, deceased. Proceedings for judicial settlement. Decree rendered.

Affirmed 80 N. Y. Supp. 933.

C. M. Wickwire (Joseph Mason, of counsel), for executors and Cordelia C. Eastman.

S. M. Lindsley, for Masonic Home and for trustees of Masonic Home, located at Utica, N. Y.

C. Lansing Jones, for Home for Aged Men.

Irving H. Palmer, for Frankie Locke Jones, Alice Locke, and Floy Locke.

John H. Murray, for Herman B. Conger and Alice Conger Ellsworth.

CALDER, S. This proceeding was commenced for the judicial settlement of the accounts of the executors herein, in which there was involved the construction of the will of decedent as to the disposition of 200 shares of the capital stock of the Utica, Chenango & Susquehanna Valley Railroad Company. It was insisted that the executors were precluded from contesting the validity of any of the provisions of said will by reason of having accepted the benefits of its terms, but it is deemed preferable to dispose of the issues upon their merits, rather than upon the question whether or not the acts of the executors operated as an estoppel which prevented their raising the question under consideration.

Tracy W. Conger died February 17, 1899. He appointed his widow, Susan Conger, his daughter, Cordelia C. Eastman, and his son-in-law, Almon R. Eastman, his executors. Susan Conger died on or about February 20, 1900. Cordelia C. Eastman and Almon R. Eastman survive. They have no children. The portions of said will pertinent to this controversy are:

"Third. I give, devise and bequeath unto my said wife, Susan Conger, and my said daughter, Cordelia Eastman, and to the survivor of them, the use for and during the period of their natural lives of two hundred shares of the stock of the Utica, Chenango and Susquehanna Valley Railroad Company now owned by me and I order and direct that such number of shares of said stock be kept by my said executors and the income or interest thereof be annually paid equally to my said wife and daughter during their joint lives and the whole of said income to the survivor during her natural life after the death of either.

"And in case said Almon R. Eastman shall survive both my said wife and daughter, I give, devise and bequeath the use, occupation, interest and income of my said homestead and of said stock of said Utica, Chenango and Susquehanna Valley Railroad Co., to said Eastman after the death of my said wife and daughter for and during the period of his natural life and to be thereafter disposed of as herein provided."

From the fifth to the fourteenth clause, inclusive, excepting the sixth, which is the residuary clause, testator, "after the death of my said wife and my said daughter and of said Almon R. Eastman," gave, devised, and bequeathed said 200 shares as follows: By the fifth clause, 5 shares to the Waterville Cemetery Association; by the seventh, 40 shares to the Waterville Union School and Academy; by the eighth, 25 shares to the Masonic Home of Free and Accepted Masons of Utica, N. Y.; by the ninth, 20 shares to the Home for Aged Men of Utica, N. Y.; by the tenth, 30 shares to Frankie Locke (now Jones), Alice Locke, and Floy Locke; by the eleventh, 30 shares to the two children of testator's brother, Abel Conger; by the twelfth, 20 shares to the two daughters of Jeremiah and Sarah Ann Dye; by the thirteenth, 15 shares to Morris B. Field; and by the fourteenth, 15 shares to Myron Field. His said widow and daughter are the residuary legatees.

It is claimed on the part of the executors and the residuary legatee, Cordelia C. Eastman, that said third provision suspends the absolute ownership of said 200 shares of stock for a longer period than during the continuance and until the termination of more than two lives in being at the death of the testator, viz., during the lives of Susan Conger, Cordelia C. Eastman, and Almon R. Eastman. The courts in

all cases endeavor to ascertain the true intent of the testator, and to carry out that intention, if it can be done without violating any principles of construction or provisions of the statute.

Section 33, c. 547, of the Laws of 1896, p. 565 (said chapter being known as the "Real Property Law"), is as follows:

"Successive estates for life shall not be limited, except to persons in being at the creation thereof; and where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto, shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created."

Chapter 417 of the Laws of 1897, p. 507 (known as the "Personal Property Law") § 2, is as follows:

"The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a will, for not more than two lives in being at the death of the testator; in other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

It will be seen, therefore, that if said 200 shares of stock vested at testator's death, or should vest at the termination of two life estates, so that the persons entitled to the remainder were fixed and certain at that time, then any life estate in excess of those allowed by the statute must necessarily be eliminated, and said property at the expiration of two life estates should then be delivered to those who, as remaindermen, are entitled to the same.

It is well settled that, where property can be held as vesting, courts will so hold, rather than to postpone the same, or render it contingent upon the happening of some event, where such vesting is consistent with the intent of the testator. The fact that Eastman's enjoyment of any part of said stock depends upon his surviving said wife and daughter, and that after his death said entire stock should be "thereafter disposed" of as therein provided, does not affect the rights of the remaindermen. The adverb "thereafter" does not postpone the vesting, but refers to the time of enjoyment of those beneficially interested. The duties imposed upon the executors did not create a trust which placed any limitation upon the bequests so that it would be impossible to determine who were the remaindermen at the expiration of any of the life estates therein created. They were the duties which often fall to persons in a representative capacity in the administration of estates. They were not to sell or reinvest, or to do any acts from which it could be inferred that it was the testator's intent to create a trust which should suspend the vesting of any or all of said property until after the termination of the lives of the three persons mentioned. Futurity was not annexed to the substance of the gift, but it related simply to the time when the remaindermen should enjoy the bounty of the testator. The statute is violated where the vesting is postponed until the termination of three or more life estates, or where at the expiration of two life estates the remaindermen are not in existence or cannot be determined. No such con-

ditions, in my judgment, prevail here. Said stock vested in said remaindermen at testator's death, subject only to said life estates therein created. The income of all of said stock was given to the wife and daughter as tenants in common, to be paid "equally" to them, for the statute expressly states it should be of such character unless declared to be a joint tenancy, and, after the death of either, the whole should be enjoyed by the survivor. The testator intended that his son-in-law should receive some bounty from this stock, provided he outlived the others, and the conclusion here arrived at carries out that intent without violating any provisions of the statute.

The widow having died, the daughter is entitled to the income from all of said stock, and one-half of the principal which the widow enjoyed should go absolutely after the death of the daughter to the remaindermen mentioned in said subdivisions of said will in proportion to their respective rights and interests. Two lives would then have expired as to said one-half. As to the other, at the death of said daughter one life only would be spent, which would leave the income of said one-half free to be expended for the benefit of Almon R: Eastman, the son-in-law, provided he outlived said daughter, and at his death two life estates only would have expired in said remaining portion, and it should then be distributed. In case he does not survive testator's daughter, then at her death all of said stock must be delivered to the remaindermen. Said Almon R. Eastman had no interest in the portion which the widow enjoyed. As to that, his would be the third life estate, and, within the subdivisions of the statutes above referred to, his life estate must be eliminated as to that portion; but, as the property vested at the death of the testator, it had no effect upon the ultimate disposition of the same. The fact that it could not be determined until one life had elapsed in which one-half said Eastman had an interest, or as to which half his would be a third life estate, is immaterial. Purdy v. Hayt, 92 N. Y. 457.

The cases cited by the learned counsel for executors have been carefully examined, and they, no doubt, decide questions there presented, and apply the proper legal construction to the phraseology there employed. Each case, however, must depend somewhat upon its own words, and the construction here given to the language used by the testator carries out, I believe, his true intent. Findings in accordance with the foregoing should therefore be presented, and a proper decree thereupon entered.

Decreed accordingly.