In the Matter of the Estate of GEORGE A. SOLEY, Deceased.

Surrogate's Court, Oneida County, March 23, 1934.

*Miller, Hubbell & Evans*, for the executor.

*Leo O. Coupe*, for Mary Ellis and Ida James.

*Willis W. Byam*, for Sadie Newland.

*Fuller, Brown, Hubbard & Felt*, for Mary A. Bolton and others.

*Cross & Cross*, for the Home for Aged Men and Couples

*Wager, Griffith & Wager*, for the Old Ladies Home of Utica, N. Y.

EVANS, S.   This is a proceeding for a judicial settlement and the construction of a portion of the last will and testament of the above-named testator.

The paragraph under consideration reads as follows:

" *Third.* I hereby will and direct that the income from all the rest, residue and remainder of my estate, as such income now is, shall go to and be equally divided between my friends Mrs. Mary

Ellis and her sister, Miss Ida James, of Utica, N. Y., Sadie Newland of 7 Dey Street, New York, City, New York, for and during the term of their lifetime. In case any of said three friends shall predecease me, the survivor or survivors shall take the whole of the present income of my said estate, the same to be equally divided between such survivors in the same way, and upon the death of each of said three friends, the use of their share shall go equally to the survivor in the same way until the death of the last of said three friends, and upon the death of the last of said three friends, the income of my said estate shall be equally divided into eight parts and one of said shares or parts of such income shall go to each of the following persons: George Bolton, Highland Park, Michigan; William Bolton, Highland Park, Michigan; Soley Cole, Utica, N. Y., and the brother of said George and William Bolton, whose name I do not know; Mrs. Glennie Kennedy of 601 Victoria Avenue, Windsor, Canada; Mary Ann Bolton, Highland Park, Michigan; Jennie Keller, Utica, N. Y. and Maude Eyre, 210 North Collingwood Ave., Syracuse, N. Y., for and during the term of their natural lives. It is my intention and desire by this paragraph of my Will to have the income from my estate, as the same is at the time of the making of this Will go to said three first mentioned friends, namely, Mrs. Mary Ellis and her sister, Miss Ida James, and Sadie Newland, during their lifetime, or the lifetime of the survivor or survivors, but in case the income from my said estate shall increase above that of the present time, then it is my desire that such increase be equally divided among said three friends and said above named eight persons until the death of the last of said three first named friends, when the whole of said income shall be equally divided among said last named eight friends as above stated, and upon their respective deaths, the principal of each and every of such eight shares shall go to and be equally divided between the Old Ladies Home of Utica, N. Y., and the Home for Aged Men and Couples of Utica, N. Y., the same to be their property forever."

It is elementary that the first duty of a court in a proceeding of this character is to discover the intent of the testator and to then ascertain whether such intent can be given legal vitality and force. (*Colton* v. *Fox*, 67 N. Y. 348.)

The rights or possible rights of the persons and institutions mentioned seem to be divided into four groups, viz.:

1. The three friends, Mary Ellis, Ida James and Sadie Newland.
2. Eight relatives having secondary rights to the first group.
3. The two charitable institutions taking a remainder.
4. Mary Ann Bolton, the sole heir at law and next of kin.

The intent of the testator, briefly stated, appears to disclose a

desire on his part to apply the income of his property to the support during their lives of the three persons mentioned in the first group; and thereafter to apply such income to the support during life of each of the eight persons mentioned in the second group. At the termination of the life estates the corpus should then be shared equally by the two charitable institutions representing the third group. Mary Ann Bolton, representing the fourth group, is included among the eight relatives representing the second group. There is no obscurity concerning the intent of the testator as to Mrs. Bolton, but her possible rights become important as the sole heir at law and next of kin of the testator in the event that the paragraph of the will under consideration is found to be invalid.

Turning from the discussion of testamentary intent to the practical task of carrying out the intent, a more difficult problem is presented. Arguments have been submitted tending to establish that the testator created a trust and unlawfully suspended the power of alienation of real property and the absolute ownership of personal property for a period of more than two lives in being. (Real Prop. Law, § 42; Pers. Prop. Law, § 11.)

This view, I think, cannot be adopted for the reason that the factors necessary to constitute a trust are lacking . These requirements are a designated beneficiary, a designated trustee who must not be a beneficiary, together with the existence of a fund or other property sufficiently identified to make title thereto pass to the trustee. There must also be an actual delivery of the property or a legal assignment thereof to the trustee with the intention of passing title to him as trustee. (*Hodgman* v. *Cobb*, 202 App. Div. 259; *Brown* v. *Spohr*, 180 N. Y. 201.)

Merely calling an executor or guardian a trustee does not make him such. (*Matter of Hawley*, 104 N. Y. 250.)

I think that there were created three life estates with cross remainders in the first group mentioned, viz., Mary Ellis, Ida James and Sadie Newland. A well-considered case with facts that closely parallel this case is to be found in *Vandenburgh* v. *Vandenburgh* (85 Misc. 131).

There a wife and two sons took the residuary to be equally divided between them and to hold the same for life and to the survivor, and at the death of the survivor whatever remained was to go to the grandchildren of the decedent. It was then held that the life beneficiaries took as tenants in common, with each holding his interest independent in title from the other. The statute that applies and governs the disposition of the property in this case reads: " Successive estates for life shall not be limited except to persons in being at the creation thereof; and when a remainder

shall be limited on more than two successive estates for life, all the life estates subsequent to these of the two persons first entitled thereto shall be void and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created." (Real Prop. Law, § 43.)

This section also applies to personal property. (*Matter of Conger*, 40 Misc. 157.)

While there is here no direction to be found for a physical division of the life estates into separate portions, the beneficial interests of tenants in common are distinct and separate from one another. Each individual share of a tenant in common should be regarded as a separate entity and entitled to its own separate tenant for two lives. (*Graham* v. *Graham*, 49 Misc. 4.)

While legal restrictions prevent the carrying out of the intent of the testator as a whole, courts recognize as an imperative duty the obligation to separate the good from the bad and to give legal effect to such portions that may be found to be valid. This process has been styled " judicial surgery." (*Matter of Trevor*, 239 N. Y. 6; *Matter of Horner*, 237 id. 489; *Matter of Colegrove*, 221 id. 455.)

The situation in the case at bar, I think, supports the view that the persons mentioned in group 1, Mary Ellis, Ida James and Sadie Newland, are tenants in common, each entitled to a life estate in an undivided one-third with cross remainders. Upon the death of the first the income from that one-third shall be equally divided and added to that of the two survivors. Upon the death of the second the income from her one-third shall be added to that of the sole survivor. At the same time one-half of the corpus of the share held by the first decedent is released and shall be paid to the remaindermen. This portion will then have been subjected to the use during two lives. Upon the death of the third, the remaining one-half of the corpus represented by the first decedent and the one-third of the corpus held by the second decedent shall be paid to the remaindermen, two-thirds of the estate having been subjected to a use during two lives. The one-third represented by the third decedent shall then be subject to the life use of the eight persons representing the second group, each having the use of an undivided one-twenty-fourth of the estate. Upon the death of each one as it occurs the corpus, being one-twenty-fourth, shall be paid to the remaindermen. When all of the eight life tenants shall have died, the entire estate will then be in possession and owned by the remaindermen.

The rights under this will of the Old Ladies Home of Utica, N. Y., and the Home for Aged Men and Couples of Utica, N. Y., appear to be clear and to require but little discussion. This is a valid gift

of the remainder of the residuary estate to these institutions after the termination of the life estates. (*Bliven* v. *Seymour*, 88 N. Y. 469, 476; *Meehan* v. *Brennan*, 16 App. Div. 395, 398.)

This is a gift of a vested remainder and meets the test commonly applied to determine that question. All persons having a life estate in any portion of the estate are definite and ascertained. Together with the remaindermen they are able to convey title. The institutions mentioned would have an immediate right to the possession of the property on the determination of the intermediate precedent estates. (Real Prop. Law, §§ 40, 43; Pers. Prop. Law, § 11.)

There remains to be considered the last portion of paragraph 3, wherein the testator explains his purpose to limit in the first instance the apportionment of income for the three friends in group 1 to the amount of income as it was at the time of the execution of the will.

In the event of increase, the surplus is to be divided between the three friends and the eight relatives mentioned in group 2. There is no evidence at this time before the court of the precise amount of income that the testator received at the date of the execution of the will. This fact should be established as a basis of computation. During the lives of any or all survivors or survivor of the three friends, then any surplus of income should be equally divided among the three friends and the eight relatives or their survivors.

This income will probably be shifting in amount and require a computation every time a distribution is made, but there appears to be no other method to adopt in order to comply with the terms of the will.

Decreed accordingly.