In the Matter of the Petition of AMY L. G. PRATT to Render and Settle Her Account as Sole Surviving Trustee under the Last Will and Testament of AMELIA L. GURLITZ, Deceased.

Surrogate's Court, Kings County, April 16, 1929.

*John W. Frost,* for the petitioner.

*Gray & Tomlin,* for Catherine B. Gurlitz.

*George D. Bergener,* for Elizabeth H. L. Gurlitz.

WINGATE, S. The surviving trustee under the will of Amelia Landon Gurlitz, in connection with her application for the judicial settlement of her accounts, has applied to this court for a direction respecting the payment of taxes on certain real property in the trust *res* and for a construction of the 2d and 3d paragraphs of the will of decedent.

In deciding the former question, it may be observed that one of the primary duties of a trustee is to conserve the property and assets of the trust estate until its complete and final termination, which takes place only when its terms are entirely fulfilled by final distribution to those ultimately entitled. Since such final

distribution has not taken place in this case, the duties of the trustee in this regard are clear, and any payments necessary for the preservation of the property should be made by her.

The material facts respecting the construction question as they appear from the record are as follows:

Testatrix died on December 17, 1917. Her will was probated in this court on January 8, 1918. She was survived by her husband, Augustus T. Gurlitz, and by three daughters, Amy, Christina and Elizabeth, and one son, Landon.

So far as is here material, the will reads as follows:

" *Second.* I give, devise and bequeath, all my property of every kind and nature, to my husband, Augustus T. Gurlitz, in trust, to receive the income thereof for life.

" *Third.* As we have advanced to each of our children except Elizabeth, the equivalent of the sum of Two Thousand Dollars, I direct that, upon the death of my husband, unless such advance shall have been made to her before the division of my property, the sum of Two Thousand Dollars shall first be deducted therefrom and paid over to my daughter Elizabeth Harper Landon Gurlitz, and the remainder of 'my property shall then be equally divided among my children, including my said daughter Elizabeth, and in case of the death of either of my children, leaving issue, such issue is to take the parent's share by representation."

By decree of this court, duly made in January, 1928, decedent's husband and the petitioner in this proceeding were appointed trustees of this trust. Augustus T. Gurlitz, the life tenant, died on October 21, 1928. At the time of his decease, the three daughters were living, but the son, Landon, had predeceased him, leaving a widow but no issue.

The practical question presented by the desired construction is whether such widow shall share in the residue by virtue of inheritance from the son, or whether the entire remainder, upon the death of the life tenant, passed to the three surviving daughters of testatrix.

It has long been settled in this State that " parol evidence " cannot be admitted to supply or contradict, enlarge or vary the words of a will, nor to explain the intention of the testator, except in two cases, viz., when there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described, or to rebut a resulting trust. (*Reynolds* v. *Robinson,* 82 N. Y. 103, 106. See, also, *Matter of Phipps,* 214 id. 378, 381; *Matter of Grossman,* 131 Misc. 526, 533.)

It follows, therefore, since neither of these conditions precedent of the admission of extraneous evidence is here present, that the

construction of the will of testatrix must be based solely on the language of the dispositive language employed.

In *Matter of Bump* (234 N. Y. 60) the Court of Appeals says (at p. 63): " In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. Canons of construction may aid us. Based as they are upon general considerations; upon guesses as to what the average man would intend by this expression or by that, we rest upon them in the absence of more certain indications. Slight variations of phrase, however, or differences in arrangement may lead us to opposite results."

This paramount rule which requires the following of the expressed intention of the testator where at all ascertainable is well illustrated in *Clark* v. *Cammann* (160 N. Y. 315), in which the court (at p. 324) enumerates six of the leading canons of interpretation, saying:

" Various rules of the interpretation of wills have been invoked, among which are the following:

" 1. The law favors the vesting of legacies.

" 2. The testator is presumed to have intended to dispose of all his property, and an interpretation which results in partial intestacy will not be favored.

" 3. If futurity is annexed to the substance of a gift the vesting is suspended.

" 4. If the gift is absolute and only the time of payment is postponed, the gift is not suspended but vests at once.

" 5. Where the gift is only found in a direction to pay at a future time, time will be deemed to be of the essence of the gift; but if the amount of the gift is to be severed instanter from the general estate for the benefit of the legatee, and the interest thereon paid him until the period of distribution, a mere direction to pay at such a period will constitute a present gift.

" And 6. Where a clause in a will is capable of two interpretations, the one should be adopted which prefers the persons of the testator's blood to strangers.

" While these rules are well recognized, and often control the determination of the meaning of wills, they all have exceptions, and must give way to the intention of the testator as expressed in the will."

Following this learned review of principles, the court proceeds to a determination that under the language of the particular will in question, a proper construction results not only in the failure of a legacy to vest, but in partial intestacy, which has frequently been held to be the result most to be avoided in a construction.

The final result of the authorities, therefore, is that, in the last analysis, the question must be determined according to the dictates

of the judicial conscience coupled with a reasonable amount of common sense in the interpretation of the meaning of the English language.

Turning now to the language of the present will, the first point which is impressive respecting the intention of testatrix is a desire that her husband shall, during his life, enjoy her estate in its entirety, The second is the wish for equality of share among her children. Bearing in mind the desire of the testatrix for the undiminished use of the entire estate by her husband during his life, it seems apparent that the second outstanding aim, of placing her daughter Elizabeth in the same position in which her other children had already been placed, was intended to be postponed until the arrival of the time when her husband no longer needed the income from her property, namely, on his death. If this conclusion is sound, it must logically follow that since the division of the remainder is postponed until after Elizabeth has been placed on an equality with the others, such division is necessarily postponed until after the death of the widow's husband. This result leads inevitably to the further conclusion that since the gift is to a class, " children " or the issue of children, only such individuals as composed the class at the time of the distribution on the death of the husband would be entitled to take.

The conclusion here attained is further strengthened by the use of the word " issue " in making provision for the beneficiaries who should take in the event of the death of any of the favored beneficiaries, namely, testatrix's children. " Issue " is a legal term, not common in ordinary conversation, and its use is persuasive of the thought that the aim of testatrix was to limit her bounty to those in whose veins the same blood as her own coursed. Were we to hold that the shares in the residue vested at the time of the death of testatrix, it is evident that this desire would fail of fulfillment, since in view of the death of her son, Landon, without issue, that portion of the remainder which would have gone to him, had he lived, would now be distributed among strangers to the testatrix. Whereas, therefore, the construction here adopted is contrary to the canon of construction first noted in *Clark* v. *Cammann* (*supra*), a contrary result would contravene the one numbered sixth.

Although in the usual case, little aid can be obtained from the determination in other cases for the obvious reason noted in *Matter of Bump* (*supra*), that different wills present an infinite variety of phraseology, the facts and language in the case of *Clark* v. *Cammann* (*supra*) are so similar as to be persuasive of the thought that the draftsman of the will in the instant case drew the present will in reliance upon the decision of the Court of Appeals in that case.

For this reason its facts and determination will be considered at some length.

In that case testator set up a trust of $10,000 " to apply the interest thereof to the use of my niece Mary Ann, wife of my executor George D. H. Gillespie for and during her natural life so as she may not anticipate the same, and from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike, and to their lawful representatives forever, as tenants in common, *per capita*, the issue of any such child who may then be dead to take his or her deceased parent's share."

Mary Ann Gillespie had two sons living at the time of testator's death. Both predeceased their mother, the one dying unmarried and without issue leaving his father as sole next of kin, and the other, without issue, but leaving a widow and his father as next of kin.

The question presented was as to the disposal of the remainder under the trust for Mary Ann.

The court, after distinguishing its decision in *Matter of Brown* (154 N. Y. 313), continues (on p. 326): " In the will we now have under consideration, the provision materially differs. ' And from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike.' Had the testator stopped here, we should have regarded this will to be in substance the same as in the *Brown* case, and should not have hesitated to hold that the legacies vested in the sons; but the testator proceeds, ' and to their lawful representatives forever, as tenants in common, *per capita*, the issue of any such child who may then be dead to take his or her deceased parent's share.' Here we have an express provision of the will which seems to negative the claim that the estate vested in the sons. The testator apparently understood that it might happen that the sons would not survive his widow or their mother, and, therefore, undertook to provide for such a contingency by giving the estate to the issue of the sons in case of their death. If the estate was intended to vest in the sons, then, upon the death of either of them, the estate would pass to their executors or administrators and might never reach the issue of such deceased child; but here we find, seemingly, an intention disclosed that the issue of the deceased child should take rather than the executors or administrators."

Again (at p. 327): " The view that we entertain of this will is, that the testator intended the estate to go to the issue of the sons of Mrs. Gillespie in case of the death of either during the

existence of the life estate. No issue of these sons were in being at the death of the testator, and it was uncertain as to whether they would ever have issue. The remainder was, therefore, contingent and not vested, for the reason that the persons to whom, or the event upon which the estate was limited to take effect, remained uncertain until the termination of the life estate. Futurity was annexed to the substance of the gift and the vesting was suspended.

" A discussion of the authorities we do not consider necessary. There is a long line of cases in which it has been held that the remainders were vested, and another line of cases, equally as long, holding remainders contingent, which cases have been disposed of under the peculiar phraseology of the wills under review in those cases. Our attention has been called to no case in which the precise language of this will has been considered in this court. * * * "

It is, therefore, determined that the remainders under the will of testatrix in this case did not finally vest until after the death of the life tenant and that in consequence, after supplying the deficiency in the advancements to Elizabeth, the residue should be divided among the children of testatrix then living.

Settle order, on notice, accordingly.