In the Matter of the Petition of HENRY T. HORNIDGE and Another, as Trustees under the Last Will and Testament of BENJAMIN FRANKLIN TERWILLIGAR, Deceased, of the Trust for the Benefit of ALICE TERWILLIGAR, to Render and Settle Their Account as Such Trustees.

Surrogate's Court, Kings County, November 6, 1929.

*Kiddle, Margeson & Hornidge*, for the petitioners.

*C. Ames Brooks*, for Title Guarantee and Trust Company, as executor of Martha Ingraham, deceased.

*Edward H. Tatum* [*C. Donald Richards* of counsel], for Ada Hornidge Storm.

*Wylie C. Margeson* in person and as attorney for Henry T. Hornidge and William T. Hornidge, legatees mentioned in the will of Alice Terwilligar, deceased.

*Gilbert & Gilbert* [*Francis Gilbert* of counsel], for Georgiana Lediard and others.

*John P. Carroll,* for Gertrude Alice Leckie.

*Arleigh Pelham* [*Arthur G. Donnelly* of counsel], special guardian for Alice Rutter Margeson, an infant.

WINGATE S. This case involves constructions of the wills of Benjamin Franklin Terwilligar, and of his wife, Alice Terwilligar, raised upon the settlement of the accounts of testamentary trustees appointed by the former. The sole questions at issue result from an attempted exercise by Mrs. Terwilligar's will of a power of appointment granted in the will of her husband.

Mr. Terwilligar died on the 3d day of June, 1923, and his will was duly admitted to probate in this court on June 15, 1923. This will, so far as here material, provided in item " Third " for a trust of $30,000 for the life of his niece, Gertrude Alice Leckie, further stipulating: "After her death I direct that the principal of said trust fund shall become part of my residuary estate and be disposed of as hereinafter provided."

The succeeding item of this will reads as follows:

*"Fourth.* All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind, wheresoever situate and howsoever held, I give, devise and bequeath to my executors hereinafter named, in trust, nevertheless, to invest and reinvest the same and collect the income therefrom, and to collect the rents from any real property that I may die seized of, and to pay all carrying charges thereof, and to pay the net income from my said residuary estate to my wife, Alice Terwilligar, during her life, and upon her death, to convey, assign and pay over said trust estate to such person or persons as she shall by her last Will and Testament direct and provide, and in case she shall die intestate, then I give, devise and bequeath my said residuary estate to my wife's next of kin and to my sister Martha and my niece Gertrude Alice Leckie, share and share alike, the children of any deceased next of kin of my said wife and of my said sister Martha and of my niece Gertrude to take the share which the parent would have taken had the parent survived."

Mrs. Terwilligar, the life tenant of the residuary trust, died on

December 13, 1928, leaving a will which was admitted to probate in this court on January 11, 1929. By this will she not only disposed of her separate estate, but expressly attempted to exercise the power of appointment under her husband's will. After certain bequests of personal belongings, she gave her entire estate, including that portion of her husband's estate over which she held a power of disposition, to her executors in trust:

*First.* To pay absolutely three legacies of $10,000 each to named beneficiaries; and

*Second.* To divide the balance into thirty-five equal shares or parts, of which she made disposition as follows:

A. Seven parts to be held in trust for Gertrude Alice Leckie for life and on her death to be divided into twenty-eight equal parts, seven of which were to be added to each of the four additional trusts thereafter established.

B. Seven parts to be held in trust for Georgiana Lediard for life and on her death the principal to be paid to Edith McClenahan, if living, and if not living then to Elsie McClenahan.

C. Seven parts to be held in trust for Florence E. Rutter for life and on her death the principal to be paid to Alice Rutter Margeson, if living, and if not living then to Elsie R. Margeson.

D. Seven parts to be held in trust for Elsie R. Margeson for life, and on her death the principal to be paid to Alice Rutter Margeson.

E. Seven parts to be held in trust for Elsie McClenahan for life, and on her death the principal to be paid to Edith McClenahan.

Benjamin Terwilligar was survived by his wife, his sister, Martha Ingraham (designated in his will as his sister Martha), his niece, Gertrude Alice Leckie, his nephew, Uniacke Robert Patten, and his niece, Martha I. Grosback, as his sole next of kin. All these persons are living, except testator's wife and Martha Ingraham, who died on May 20, 1928.

Mrs. Terwilligar was survived by Florence E. Rutter, Georgiana Lediard and Ada Hornidge Storm as her sole next of kin.

It is, of course, fundamental in determining whether or not a power of appointment granted by one will has been validly exercised by another, that both wills must be read together. (Real Prop. Law, § 178; *Genet* v. *Hunt*, 113 N. Y. 158, 170; *Dana* v. *Murray*, 122 id. 604, 616; *Hillen* v. *Iselin*, 144 id. 365, 373.) (See, also. *Thomson* v. *Livingston*, 6 N. Y. Super. Ct. [4 Sandf.] 539; *Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Beardsley* v. *Hotchkiss*, 96 id. 201.)

Two further basic rules applicable in this connection should be noted:

The validity of a will "must be determined not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends not on what has happened since the death of the testator, but on what might have happened." (*Matter of Wilcox*, 194 N. Y. 288, 295.)

"In determining the validity of limitation of estates, * * * it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void." (*Schettler* v. *Smith*, 41 N. Y. 328, 334.)

These principles have been repeatedly reaffirmed. (See *Kahn* v. *Tierney*, 133 App. Div. 897; affd., 201 N. Y. 516; *Delafield* v. *Shipman*, 103 id. 463; *Henderson* v. *Henderson*, 113 id. 1; *Roe* v. *Vingut*, 117 id. 204; *Monypeny* v. *Monypeny*, 202 id. 90; *Matter of Horner*, 237 id. 489; *Matter of Perkins*, 245 id. 478; *Matter of Durand*, 250 id. 45.)

When the two wills in the instant case are read together in the light of these principles, it becomes apparent that the appointment attempted by the will of Mrs. Terwilligar is bad in two respects: *First*, as to the disposition of the remainder of the $30,000 trust fund set up in item "Third" of the will of B. F. Terwilligar; and, *second*, as to one-fifth of the residue in which, under the will of B. F. Terwilligar, Mrs. Terwilligar had a life estate, and which, by her will, she directs to be held for the life of Gertrude Alice Leckie, and then to be divided into four parts, one of which is to be held for the life of each of the succeeding trust beneficiaries under her residuary clause. In both instances, there is a possible restraint on alienation for three lives. Both are, therefore, void, so far as they attempt to dispose of Mr. Terwilligar's property. (Real Prop. Law, § 42; Pers. Prop. Law, § 11; *Mansbach* v. *New*, 58 App. Div. 191; affd., 170 N. Y. 585, and cases above cited.)

There is no necessity for present determination as to whether the fund of $30,000, which Mr. Terwilligar set up for Gertrude Alice Leckie, is, in consequence of the manner of its appointment, limited on four lives or only on three. It is obviously limited on more than two since under Mr. Terwilligar's will it is to be held, *first*, for the life of Miss Leckie, and, *second*, for the life of Mrs. Terwilligar under the residuary trust, while Mrs. Terwilligar

directs that a moiety be held for the lives of each of the life bene-
ficiaries designated in the subdivisions designated "B" to "E"
above. It is, therefore, immaterial in this connection whether the
trust in Mrs. Terwilligar's will of seven-thirty-fifths of her residue
for Miss Leckie is a fourth life as to the part derived from the
$30,000 primary trust fund for Miss Leckie, or whether two of the
limitations being on Miss Leckie's life, it is to be considered as
only three.

The remaining questions to be considered are how far this partial
invalidity taints the whole testamentary scheme and as to the
persons entitled to take as a result of such invalidity.

Counsel for one of the claimants contends with much earnestness
that the result is to render invalid not only all the provisions of
the will of Mrs. Terwilligar, but also the entire underlying will of
her husband, the argument being that the two wills must be con-
strued together; that such construction is similar in effect to the
joint construction of a will and its codicil; that upon such con-
struction it is found that trusts for more than two lives have been
erected; and, finally, that in consequence the entire testamentary
structure *ab initio* must fall. This argument possessed at least
the advantage of novelty. Its fallacy lies in the second link in
the chain. It is quite true that the two wills are, to a certain
extent and for certain purposes, to be read and construed together,
but such construction differs in many important particulars from
that in which a will and its codicil receive joint construction. The
error into which counsel has fallen lies in a failure to comprehend
the basic principles of testamentary powers of appointment. The
fundamental characteristic of such powers is illuminated by the
Court of Appeals in *Hillen* v. *Iselin* (144 N. Y. 365), where the
court says (at p. 373): "The donee of a special power to appoint
an estate, given by deed or will, is invested with an authority
merely, and unless the appointment conforms to the authority
given, the appointment is invalid, in so far, at least, as it transcends
the power. The validity of an act in execution of a power is
determined by the principles of agency."

Applying the principles of agency, it is obvious that the donee
is limited in the execution of the power, not only by the express
terms and qualifications of the power, but that there is the further
implied limitation that he is authorized to do only such acts as
are permitted by law. The result is obvious, that where the donee,
in attempted execution of the power, transcends his express limita-
tions or attempts an illegal disposition, the effect of his act "*in
so far, at least, as it transcends the power*" or attempts an illegal
disposition, is a nullity with like effect as if he had not attempted

to exercise it. (Real Prop. Law, § 177; *Hillen* v. *Iselin, supra; McLean* v. *McLean,* 174 App. Div. 152, 157; *Austin* v. *Oakes,* 117 N. Y. 577; *Root* v. *Stuyvesant,* 18 Wend. 257, 273; *Matter of Trowbridge,* 124 Misc. 317.)

The other extreme of the contentions presented to the court is that all of the provisions of Mrs. Terwilligar's will should be upheld except the part including the one-fifth of the estate in trust for Gertrude Alice Leckie with its succeeding life estates in trust, and that in this particular " the remainders should be accelerated," the life estate for Miss Leckie being upheld, and the principal paid over absolutely to the remaindermen on her death.

The questions involved in the consideration of trusts, invalid because limited on more than two successive lives, or possessing other unlawful characteristics, have given rise to many learned opinions in all of the courts of the State. Unfortunately, a large part of the legal profession seems to have failed to comprehend the basic principles governing such questions, with the result that needless litigation has ensued, with consequent waste of the assets of the estates involved. It may, therefore, be of advantage to analyze the results reached in some of the outstanding cases on the subject, in an effort to demonstrate that the many apparently conflicting determinations are really based on a very few fundamental legal conceptions.

In any general consideration of the subject it should be noted at the outset that section 43 of the Real Property Law has no application to questions of this nature. This section reads in part: " * * * where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created." This section, which is a substantial re-enactment of statutes dating back to very early times, was, as early as the middle of the last century, held not to apply to active trusts (*Amory* v. *Lord,* 9 N. Y. 403, 411), and such has been the uniform determination since that time (*Woodruff* v. *Cook,* 61 N. Y. 638, 641; *La Farge* v. *Brown,* 31 App. Div. 542, 545; *Matter of Abbey,* 98 Misc. 506, 508; *United States Trust Co.* v. *Webb,* 110 id. 683, 687) the only, apparently, conflicting expression being a dictum in *Matter of Perkins* (127 Misc. 193, 196), relating to the analogous provisions of section 45.

The erroneous impression to the contrary has, no doubt, partially resulted from the fact that the courts in many cases have attained similar results in cases involving active trusts to those directed by the statute in legal estates, but the fact that such results are

not uniform demonstrates that these determinations are not the result of statutory enactment, but are based on principles of law which in some instances produce such effect and in others do not.

In reviewing the salient facts and decisions in certain outstanding determinations, merely a skeleton outline will be given.

A trust for a son, with direction that a part of the income should be paid to him and the balance accumulated until he became thirty years of age, with remainder to him on conditions, if he reached thirty, otherwise to his issue or in default thereof to named beneficiaries, was held void as to the accumulation beyond twenty-one, but valid in all other respects. (*Hull* v. *Hull*, 24 N. Y. 647.)

A trust for testator's wife, followed by a five-year accumulation of income, succeeded by trusts for children, with remainders to their issue, was held entirely valid, except as to the five-year accumulation, which was deleted. (*Kalish* v. *Kalish*, 166 N. Y. 368, affg. 45 App. Div. 528.)

A trust *inter vivos* gave the grantor the income for life with testamentary power of appointment which she exercised in favor of an afterborn child and grandchild, with remainder to a specified charity. It was held she died intestate as to the remainder and that the final bequest to the charity would not be accelerated. (*Tweddell* v. *N. Y. Life Ins. & Trust Co.*, 49 App. Div. 258; affd., 166 N. Y. 608.)

A. gave his entire estate in trust to pay daughter R., $1,500, granddaughter L., $1,000, daughter-in-law M., $360, and grandchildren F., A. and I., children of deceased son, $1,500 annually until discharge of certain incumbrances, directing the balance of income to be used in discharging such incumbrances. When this had been accomplished, he directed the corpus to be divided into three parts, with income of one each to be paid to R., L. and F., A. and I., with remainders to their issue. It was held that the provision for accumulation for payment of incumbrances and all previous directions were void and that the succeeding trusts would take effect on testator's death. (*Hafner* v. *Hafner*, 62 App. Div. 316, modifying 34 Misc. 65; affd., 171 N. Y. 633.)

Testator, by will, erected a trust for his children, measured by the lives of the two youngest living at his death, directing that on the death of the survivor the corpus should be divided, in equal shares, among his living children and the descendants *per stirpes* of the dead. By codicil he provided that if a certain daughter married a named individual, she should receive only an annuity of $15,000, and on her death $300,000 should be divided among her children. It was held that the will and codicil together effected an illegal suspension; that the provisions of the codicil would be

declared void and distribution made as provided in the will. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, revg. 85 App. Div. 549, which modified 82 N. Y. Supp. 355.)

A testamentary trust for a daughter for life succeeded by a trust for her surviving children until they reached twenty-one, with absolute gift of proportionate shares to them on attaining majority, with gift over to specified individuals in the event of the daughter's dying without issue, was held bad as to all limitations beyond the life estate to the daughter, it being further held that testator died intestate as to the remainder. (*Matter of Wilcox*, 194 N. Y. 288, revg. 125 App. Div. 152.)

A trust for the widow for life to apply so much of the income as would properly support her, the balance to be accumulated and on her death specified sums to be paid to designated daughters and the remainder to specified sons, was held valid, except as to the direction for accumulation, the excess income during the wife's life passing to the sons under the residuary clause. (*Endress* v. *Willey*, 52 Misc. 388; affd., 122 App. Div. 110; affd., 197 N. Y. 541.)

A trust to accumulate for fifteen years and then to pay to the persons then constituting a certain class was held wholly void. (*Brinkerhoff* v. *Green*, 134 App. Div. 916; affd., 201 N. Y. 559.)

A trust to pay the income for five years to two specified charities and then to pay absolutely to another, was held void as to the five-year beneficiaries and to vest in immediate possession in the charity named in remainder. (*Matter of Berry*, 154 App. Div. 509; affd., 209 N. Y. 540.)

A trust was erected to continue for at least twenty-five years, or longer in the event that " C." should outlive that period, income payable to " C." for life, to the extent of $2,100 annually, any excess to " M." and " D." Alternate dispositions of income were made in case " C." died within twenty-five years. The remainder was given to such of specified individuals as should be living at the termination of the primary trust. It was held that the trust was enforcible as drawn during " C.'s " life, but that the remainder passed as intestate property. (*Davis* v. *MacMahon*, 161 App. Div. 458; affd., 214 N. Y. 614.)

A testator gave property to trustees to manage, etc., and to pay certain amounts to specified individuals after five years and to others after eight years. The suspensory provisions were deleted and the beneficiaries held immediately entitled. (*Matter of Hitchcock*, 222 N. Y. 57, affg. 176 App. Div. 326.)

A testator gave his estate in trust for his wife and on her death directed its division into three parts, one for each of his children, providing that on the death of any such child the remainder should

be paid to his " heirs " or, in default of such, that it shou d be added in equal shares to the trusts for the other children. It was determined that the first two trusts were valid, but that the remainder to a child who died without issue passed as intestate property. (*Matter of Silsby*, 229 N. Y. 396, revg. 190 App. Div. 969.)

A testamentary trust was created for a wife for life, remainder to a son, with provision that if the son predeceased his mother, the corpus should be divided on the mother's death into as many parts as the son left children and one part held in trust for each child until it reached thirty, and then paid over to him. It was held that the trust for the wife was good, but if the son predeceased her the remainder passed under the Statute of Distributions. (*Matter of Durand*, 250 N. Y. 45.)

Testator directed that the income from a trust fund be accumulated for ten years and at the termination of the period be paid to those employees of his business firm who in the interval fulfilled certain requirements. It was held that he died intestate as to such fund. (*Woolley* v. *Hutchins*, 114 Misc. 11; affd., 189 N. Y. Supp. 959.)

A testamentary trust directed payment of the income to the wife for life in lieu of dower, etc., remainder on her death to a specified charity. The wife elected against the will and it was held that the charity was entitled to take immediately to the extent permitted by section 17 of the Decedent Estate Law.* (*Matter of Donchian*, 120 Misc. 535; affd., 209 App. Div. 806.)

A will gave the residue in trust for testatrix's husband for life, with remainder to ten named charities. The court, while declaring that a portion of the remainder was not validly bequeathed, refused to decree a distribution pending the determination of the life estate. (*Matter of Franklin Trust Co.*, 190 App. Div. 575.)

Testator bequeathed certain stock to his wife and daughter for their joint lives and to the survivor for life, thereafter to " E.," if living, for life, and on the death of all three to specified remainder-men. It was held that the will would be construed as a direct bequest and not as a trust and would be upheld in all respects as to the widow and daughter and as to one-half to " E.," if he survived them, the other half passing to the remaindermen on the death of both the widow and daughter. (*Matter of Conger*, 81 App. Div. 493, affg. 40 Misc. 157.)

A will devised property for three successive lives, remainder to the children of certain life tenants living at the termination of the

---

* Amd. by Laws of 1929, chap. 229.— [REP.

final life estate. It was held that the first two life estates would be upheld, and on their termination the corpus would be distributed as in intestacy. (*Matter of Ryder*, 41 App. Div. 247.)

A will directed that the residuary estate be held, one-half for testator's son and the other half for his daughter, with remainder of her half to such children as might survive her, the latter trust being limited on three lives. It was held that he died intestate as to the entire residue. (*Matter of Douglass*, 120 Misc. 193.)

An analysis of these cases shows that all of the usual bases for declaring a trust provision invalid are included, namely, directions for unlawful accumulation, for holding for more than two lives, for holding for lives not in being, and for holding for a specific number of years. In addition, there are cases of failure consequent on election to take against the will and resulting from an excessive gift to charity.

Obviously, none of the illegal directions was given efficacy, but in all cases the expressed desire of the testator effectuated, so far as it was possible of definite ascertainment as of the date of his death, or, in cases of a trust *inter vivos*, so far as it could be discerned at the time of execution of the trust deed, the only exceptions, presented in *Hafner* v. *Hafner*, *Herzog* v. *Title Guarantee & Trust Co.* and *Matter of Douglass*, being that where it was apparent from a reading of the entire document that the main testamentary plan would be unbalanced by the deletion of the illegal part, so much and no more of the remaining portion of the document would be voided as would, if left standing, result in the defeat of that plan.

In cases involving questions of the type here presented, there are usually, *first*, one or more provisions which, standing by themselves, would unquestionably be valid; *second*, one or more invalid provisions, and, *third*, a disposition of the remainder.

Considering these three varieties of directions, it has been noted that in all except three of the cases considered, the provisions of the will which, standing by themselves, would have been valid, have been upheld. The basis of such determinations has been stated in *Matter of Durand* (250 N. Y. 45, at p. 53) as follows: " The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question.'

In determining a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will."

The same court said in Kalish v. Kalish (166 N. Y. 368, at p. 375): " * * * when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be * * *."

The Appellate Division of this Department further elucidates this principle in Matter of Franklin Trust Co. (190 App. Div. 575), saying (at p. 576): " * * * the court should not dismember the present valid trust because of what may happen after its termination. It is not a case of present testamentary failure * * *.

" In general, a valid estate for life must terminate before making a final distribution based on invalid future estates, or estates in remainder."

Substantially all of the cases hereinbefore noted recognize this rule. Additional applications may be found in Carrier v. Carrier (226 N. Y. 114, 123); Kennedy v. Hoy (105 id. 134, 137); Matter of Central Union Trust Co. (193 App. Div. 292, 296); Lord v. Lord (44 Misc. 530, 534), and many other cases.

This rule of validity of otherwise valid trust provisions will probably apply in ninety-five per cent of the cases which arise. There are exceptions, but such exceptions are comparatively rare. Matter of Douglass (supra) presents a typical example of such an exception. In that case, testator had a son and a daughter. Even a casual reading of his will indicates that it was his intention that their respective branches of the family should benefit equally from his estate. He bequeathed half to the son outright. The other half he gave in trust for his daughter and her descendants, carrying the restrictions so far as to render the trust invalid. Had the court declared the trust alone invalid, the son would have received three-quarters of the estate and the daughter one-quarter. It was properly held that such a result would defeat testator's entire testamentary plan and that it must be held that the invalidity of the single item voided the entire will.

No set rule can be formulated to cover such exceptions to the general rule, but it is believed that a case of this type will seldom arise which does not involve the elements of parent and children, coupled with trusts of proportionate parts of the estate to the beneficiaries in question, or the disinheritance in favor of a stranger, of the members of a testator's immediate family.

There remains for consideration the rules applicable to the disposition of remainders following invalid trust provisions. While

in reality this phase of the subject is the simplest of all, it appears to be the portion upon which the conceptions of a large portion of the legal profession are most turgid. The statement of the rule is simple — if the remainder following a void trust provision is vested, the remaindermen will take upon the deletion of the invalid direction; if the remainder is contingent, the property will pass either pursuant to a residuary clause elsewhere contained in the will, or in default thereof, as intestate property. These principles are emphasized in all of the cases above considered, but here, as elsewhere in the subject of wills, the chief difficulty experienced seems to be the determination of when an estate is vested and when contingent. This stumbling block, it is believed, arises in large measure as a result of the definition of vested and contingent estates contained in section 40 of the Real Property Law. This section reads as follows: " A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

It might be an interesting study for the curious to attempt a compilation of the number of pages of learned opinions of the courts of this State which have attempted to explain the meaning of this enactment. In spite of this outpouring of legal learning, the application in a vast number of cases which are constantly arising, remains abstruse. Take the case of a trust to " A " for life with the remainder payable on his death to " B," if living at such time and if not then living, to " C." Under the definition of a vested estate contained in the section, the remainder is vested in " B," since he is " a person in being who would have an immediate right to the possession of the property, on the " determination " of the life estate to " A." It is equally obvious that " B " may die before " A," in which event he will never receive any share in the estate. In other words, his receiving any share in the estate is expressly contingent on the then undeterminable question of his survivorship of " A." It might, therefore, well be argued, that in such a case, which arises with great frequency, the remainder also falls within the statutory definition of a contingent estate for the reason " that the person to whom * * * it is limited * * * remains uncertain " until the termination of the preceding estate. Whatever merit might have existed in the general class of cases in a contention that under such circumstances the remainder should be classed as contingent, has long since become academic by reason of repeated determinations by courts whose decisions

are binding here. (*Moore* v. *Littel*, 41 N. Y. 66, 76, 77, 79, 80; *Matter of Steinwender*, 176 App. Div. 517, 519; affd., 221 N. Y. 611; *United States Trust Co.* v. *Hoyt*, 179 App. Div. 923; affd., 223 N. Y. 617; *Stringer* v. *Young*, 191 id. 157; *Matter of Haggerty*, 128 App. Div. 479, 480, 481; affd., 194 N. Y. 550.)

As a result of these and many other adjudications, it is firmly established that as to all general questions affecting estates, the law recognizes three varieties of remainders, which may be differentiated as follows: *First*, absolutely vested remainders, in which the taking by a specified individual is directed without any proviso or limitation whatsoever, *e. g.*, to " A " for life with remainder to " B;" *second*, contingently vested remainders or remainders " vested subject to being divested," in which the remainder is given to one person with a proviso that under certain contingencies it shall go to another, *e. g.*, to " A " for life with remainder to " B " if " B " be living at A's death, otherwise to " C;" or to " A " for life with remainder to " B " if " C " dies without issue, otherwise to the issue of " C;" and, *third*, contingent remainders, where the gift is to persons who at some future time may answer a certain general description, *e. g.*, to " A " for life, remainder to the issue of " B," who is childless.

While this rule is unquestionable in the great bulk of questions affecting trust estates, the decided cases involving remainders following invalid trust provisions are uniform in placing contingently vested and purely contingent remainders in the same class so far as concerns the effects produced. The reason for this distinction is obvious. Here the inquiry is solely directed to the question of whether or not testator desired that certain specified individuals should under every conceivable circumstance receive the remainder. If this question can be answered in the affirmative, such remainder, following an invalid trust provision, will be accelerated, otherwise it will not. Stated in another way, if viewing the matter as of the date of death of the testator, one or more persons can be specifically pointed out who, if all of the directions of the testator, both valid and invalid, were given effect, would, upon the termination of the previous estates, be absolutely entitled to the remainder without qualification or condition of survivorship or otherwise, then on the deletion of the invalid provisions such individuals will take, otherwise they will not.

When tested in this way, the results affecting the devolution of the remainders in the cases hereinbefore considered are uniform, except in the rare cases noted of such result defeating the entire testamentary plan. If the remainder was absolutely vested as herein defined, it passed to such named remaindermen, otherwise

it passed to the general remaindermen under another clause of the will, if any, or, in default, was administered as intestate property.

Before applying the foregoing principles to the instant case, one additional applicable rule of distribution must be noted. This principle was enunciated in *Fargo* v. *Squiers* (154 N. Y. 250, modifying 6 App. Div. 485). The court says (at p. 261): " We thus have this situation presented: A will in which a trust is created for the benefit of infant children; an estate in which there are two funds, one of which can lawfully be devoted to the purposes of the trust and the other not, and specific legacies in regard to which there has been no direction as to the fund out of which they should be paid. There is no question respecting her intention. She intended the whole of her residuary estate, including that of which she had the power of appointment, to be held for the use of the Squiers children. In so far as her will is in violation of the statute her intention cannot be carried out, but a court of equity, in the exercise of its discretion, has the power to carry out the intention of the testatrix, as disclosed by her will, so far as it is not violative of the provisions of the statute. It cannot 'devote the trust estate created by the will of William G. Fargo to the making up of the trust created by the will of Georgia Fargo; but it can, for the purpose of carrying out her wishes and intention, require the specific bequests to be paid out of the estate of which she had the power of appointment, thus saving her individual estate unimpaired to constitute the trust provided for by her will. Ordinarily, perhaps, the individual estate would first be exhausted in payment of the specific bequests; but in this case to so pay the specific bequests would not only defeat the main object and purpose of the will, but the intention of the testatrix. The situation is not an uncommon one in principle; it is analogous to the marshaling of the estates of a deceased person. The rule is that the personal estate must be first exhausted in the payment of the debts to the relief of the real estate; but courts of equity will not enforce this rule where it is in apparent hostility to the purpose and intent of the will, and will defeat the bequests made therein. The equitable rule is that where one claimant has two funds to which he may resort to answer his demand, and another claimant has an interest in only one of such funds, he can compel the former to take satisfaction out of the fund in which the latter has no lien, and this rule is applicable to legatees as well as creditors."

This rule was followed in *Maynard* v. *Maynard* (108 Misc. 362).

In the instant case we have three possible funds for marshaling, *first*, the $30,000 set up in the " Third " item of the will of Mr. Terwilligar; *second*, the residuary estate under the " Fourth " item

of his will; and, *third*, Mrs. Terwilligar's own property. As Miss Leckie, the life beneficiary under the first fund, is still living, no part of it is presently available for distribution, but both of the other funds are. So far as they can be erected from Mrs. Terwilligar's personal estate, all of the trust directions of the will are valid, but to the extent that any portion of the funds must come from the residue of Mr. Terwilligar's estate, her trusts are sustainable for only one additional life, since they have already been held for the life of Mrs. Terwilligar.

From an analysis of the facts disclosed by her will, it is apparent that the instant case does not present an interlocked testamentary scheme such as to require the application of the exception to the general rule above noted and a determination that the initial valid trust will be tainted by a subsequent illegal direction.

It follows, therefore, on applying the principle of marshaling enunciated in *Fargo* v. *Squiers* (*supra*) and the general trust rules previously considered, that the three specific legacies contained in Mrs. Terwilligar's will will first be paid from the funds coming from Mr. Terwilligar's residuary estate; the total of Mrs. Terwilligar's estate will then be added to the sum remaining from Mr. Terwilligar's residue, and this will be divided by five to obtain the sum which is to form the corpus of each of the five primary trusts, designated "A" to "E," inclusive. When this sum is determined, so much of Mrs. Terwilligar's estate as is necessary and available will be used for setting up the trust for Gertrude Alice Leckie, designated "A" above, the balance of Mrs. Terwilligar's property, if any, and the moneys derived from the remainder of Mr. Terwilligar's estate being employed in the erection of the trusts designated "B" to "E," inclusive. In case Mrs. Terwilligar's property is sufficient for the erection of this trust for Gertrude Alice Leckie, all of the trusts created by her will are entirely valid as dispositions of the joint property, with the exception of the $30,000 fund under item "Third" of Mr. Terwilligar's will, but if any of the funds coming from Mr. Terwilligar's residue are necessary for the purpose of constituting Miss Leckie's trust, they will be held in such trust for Miss Leckie until her death, but on her death, since the two permissible life estates will have been exhausted, they must go into absolute possession. This will require the deletion, as to these funds, of the secondary trusts for Georgiana Lediard, Florence E. Rutter, Elsie R. Margeson and Elsie McClenahan, respectively. This raises the question as to whether the remaindermen under these trusts may then immediately take in possession.

Applying the tests above considered, it will be seen that the

remainder for Edith McClenahan in the trust designated " B " and for Alice Rutter Margeson under that numbered " C " above, are not absolutely vested, while those for Alice Rutter Margeson under " D " and Edith McClenahan under " E " are. It follows, therefore, that as to the two latter, the remaindermen would take in possession, while as to the two former, they would not.

As the two former remainders in this connection would represent property not validly appointed, they would pass under the alternative disposition contained in the final clause of item " Fourth " of Mr. Terwilligar's will. The same disposition will result respecting the remainder of the $30,000 fund in which Miss Leckie receives the primary life estate under item " Third " of Mr. Terwilligar's will. Upon her death, one-fourth will pass to Alice Rutter Margeson under " D " above, and one-fourth to Edith McClenahan under " E," while as to one-half Mrs. Terwilligar did not validly exercise the power of appointment.

The method of disposition of these remainders which were not validly appointed will be determined by the alternative gift of Mr. Terwilligar that " in case she shall die intestate, then I give, devise and bequeath my said residuary estate to my wife's next of kin and to my sister, Martha, and my niece, Gertrude Alice Leckie, share and share alike, the children of any deceased next of kin of my said wife and of my said sister and of my niece Gertrude to take the share which the parent would have taken had the parent survived." Since the substitutional gift to Mrs. Terwilligar's next of kin was to take effect only on her failure to exercise the power of appointment by her will, which could not become effective or fail until she died, and since, furthermore, a person has no heirs or next of kin until his decease, it is obvious that the gift over in this respect is to the next of kin of Mrs. Terwilligar at the time of her death. These are Florence E. Rutter, Georgiana Lediard and Ada Hornidge Storm, and the effect to be given to this direction is the same as if their names had been inserted in this item of Mr. Terwilligar's will in place of words " my wife's next of kin." It is, therefore, determined that any remainders undisposed of, as hereinbefore outlined, will, when payable, belong to these three and to Gertrude Alice Leckie and Martha Ingraham, " share and share alike." If, when the time for distribution arrives, any one of these shall have died leaving children, the children will be entitled to receive the parent's share, but if not, such share will be payable to the personal representatives of the deceased.

Enter decision and decree, on notice, accordingly.