In the Matter of the Estate of EDWARD L. MILHAU, Deceased.

Surrogate's Court, Kings County, April 21, 1934.

*Milbank, Tweed, Hope & Webb*, for the petitioners.

*Mitchell, Taylor, Capron & Marsh*, for Valerie De M. Nicholson and another, individually and as executor of Rene L. Milhau, deceased, respondents.

*William Lehrman* [*William Edelson* of counsel], for the administrator, etc., of Leonie De M. Evans, deceased, respondent.

*Walter Large*, for Leonie W. Vosburgh and another, respondents.

*Frank P. Walsh*, for Edward J. Milhau, respondent.

*Miles F. McDonald*, special guardian.

WINGATE, S.   It is a familiar peculiarity of probate practice that no variety of proceeding evokes so great a diversity of contentions as an application for the interpretation of a testamentary document which involves a potential violation of the Statute against Perpetuities.   The present is no exception to this rule, the positions of the several parties ranging from the assertion of the validity of all of the several parts of the single questioned clause to invalidity of the entire will.

Whereas learned and weighty briefs have been submitted on behalf of each of the parties to the litigation, it cannot be con-

sidered other than regrettable that so large a proportion of the weight in certain instances is purely physical, owing to the inclusion of extended quotations of particular precedents disclosing the animadversions of other tribunals respecting different wills presenting variant phraseology. On primary principles, these citations are of no possible value in determining the proper interpretation of the present document. (*Matter of Corlies,* 150 Misc. 596, 597, 598, and cases cited.)

Edward L. Milhau died on May 27, 1903, his will and a codicil being admitted to probate in this court on the nineteenth of August following. Except for a few inconsequential bequests, his entire estate was primarily dedicated to his four children, Leonie, Rosella, Edward and Rene. The shares of the daughters, which were respectively one-quarter and three-eighths, were directed to be paid to them outright, while the sons' portions of one-eighth and one-quarter respectively were erected into trusts, the terms of which give rise to the present proceeding.

These trusts were couched in identical language except for the names of the respective sons who were designated as primary life tenants, and read as follows: " I give devise and bequeath another of said parts to said Leonie M. Vosburgh, Rosella Milhau and Roydon M. Vosburgh, their survivor or survivors, in trust, however, to invest and keep the same invested, and to collect and receive the rent, issues and profits thereof, and pay from said rents, issues and profits the expenses of administering this trust, and pay the net rents, issues and profits of said part to my son, [named] during his life, at stated intervals, or in their discretion to apply the same to the use of said son, in such manner and at such times as they deem for his best interest and welfare. And upon the death of my said son, leaving him surviving a widow, to pay to the said widow, during her life, or widowhood, at stated intervals in their discretion, one-third of the net rents, issues and profits of said part; and the other two-thirds thereof to apply to the use of the lawful descendants of my said son, at such times and in such manner as said trustees may think fit, during the life or widowhood of said widow; such descendants however, to be entitled to the same *per stirpes;* and in default of such descendants then to pay over said two-thirds of such net rents, issues and profits to my remaining children and their descendants *per stirpes,* during the life or widowhood of said widow.

" Upon the death of my said son, leaving no widow him surviving, or upon the death or re-marriage of such widow, I give, devise and bequeath the whole of said part, absolutely and in fee, to my son's lawful issue *per stirpes;* or in default of such issue,

then to the persons who would be entitled thereto under the statutes of descent and distribution of the State of New York. if this will had not been made."

Reduced to its lowest terms, this amounts to a direction for the erection of successive trusts, the duration of which are measured by two lives, *first*, that of the particular son, and *second*, that of his widow, if any. During the continuance of the first, the income is payable to the son, while under the second it is payable one-third to his widow, and two-thirds to his descendants, if any, and if none, then to testator's other children. If no widow survives, the second trust is deleted. Upon the termination of the trust or trusts, the corpus is given to the son's issue *per stirpes* or to testator's next of kin in default thereof.

Testator was survived by all four of his children. At the time of his death, Edward was married, but his wife subsequently died and he was remarried; Rene was still a bachelor, but married within the year, and died about four years later, leaving a widow and two children. One of the latter, Leonie, died in 1928 leaving a child. The foregoing sets forth the complete pertinent necrology.

Beginning with the death of Rene in 1907, the trustees have continued to administer the trust of which he was the primary life tenant, in accordance with the terms of the will, paying one-third of its income to his widow, and the balance to his children until the death of Leonie, since which time, her share has been accumulated for her daughter, Joyce, the present amount of such accumulation being $4,300.71. The trustees have three times accounted for their acts in this connection, decrees settling the transactions embraced in such accounts having been entered without opposition on October 29, 1909, on September 21, 1929, and on October 3, 1933. On none of these occasions was the validity of any of the trust provisions questioned or a construction sought.

On the last occasion, one of the original trustees having died, the two survivors sought and received permission to resign, and the present successor trustee was appointed in their stead. This successor has instituted the present proceeding for a construction.

It is one of the most elementary principles of the law relating to perpetuities that the validity of any attempted restraint on alienation must be tested by its possibilities when viewed from the standpoint of the death of a testator or the time of creation of a trust *inter vivos*. " The validity of a will depends not on what has happened since the death of the testator, but on what might have happened." (*Matter of Wilcox*, 194 N. Y. 288, 295.) " To render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate "

within the period limited by the pertinent statutes, which are section 42 of the Real Property Law and section 11 of the Personal Property Law. (*Schettler* v. *Smith*, 41 N. Y. 328, 334; *Henderson* v. *Henderson*, 113 id. 1, 15; *Central Trust Co.* v. *Egleston*, 185 id. 23, 31; *Matter of Mount*, Id. 162, 169; *Moneypeny* v. *Moneypeny*, 202 id. 90, 93; *Matter of Horner*, 237 id. 489, 502; *Matter of Hitchcock*, 222 id. 57, 71; *Matter of Perkins*, 245 id. 478, 481, 482; *Matter of Durand*, 250 id. 45, 54; *Matter of Terwilligar*, 135 Misc. 170, 175; affd. on opinion of this court, 230 App. Div. 763; *Matter of Burling*, 148 Misc. 835, 841.)

Both of the applicable enactments restrict the lives by which the permissible restraint on alienation is to be measured to " *lives in being* " at the creation of the estate, and the requirement that both of the limiting lives must unquestionably be in existence at the inception of the trust, if the limitation is to be valid, has been as consistently maintained as the one which prescribes that two lives only can be the limit of duration. (*Harrison* v. *Harrison*, 36 N. Y. 543, 544; *Purdy* v. *Hayt*, 92 id. 446, 456; *Greenland* v. *Waddell*, 116 id. 234, 244; *Cochrane* v. *Schell*, 140 id. 516, 539; *Bindrim* v. *Ullrich*, 64 App. Div. 444, 449; *Wright* v. *Mercein*, 34 Misc. 414, 418; *Matter of Trowbridge*, 124 id. 317, 319; *Matter of Finck*, 171 N. Y. Supp. 573, 575, not otherwise reported.)

The application of these principles to the trusts attempted to be erected by the will at bar is obvious. Upon the death of either of the primary life tenants, " leaving him surviving *a* widow," one-third of the income of the trust of which he is the primary life tenant is payable to such widow " during the life or widowhood of said widow." Tested by the criterion of possibility, it was obviously conceivable that Rene, who was unmarried at the death of the testator, might postpone his nuptials for some time and marry one who was born subsequent to the death of the testator, or that the wife of Edward might die, as she did, and that he might, instead of remarrying promptly, adopt a similar course. In either such event, the spouse, if she survived the primary life tenant, would be " *a* widow " and would unquestionably qualify within the terminology of the testamentary instrument. In view of such possibilities, it cannot be said that the secondary trusts are so limited that in every possible contingency they will absolutely terminate " within two lives in being at the death of the testator." The secondary trusts are, therefore, inevitably bad.

This partial invalidity does not, however, necessarily taint the primary trusts. Since very early times it has been the effort of courts to salvage as much as might be possible from a partially invalid instrument. As early as the reign of Charles II (1511) in

the case of *Maleverer* v. *Redshaw* (1 Mod. 35), Justice TWISDEN quoted Lord HOBART as saying " the statute is like a tyrant; where he comes he makes all void; but the common law is like a nursing father, makes void only that part where the fault is, and preserves the rest."

The application of this basic rule has expanded through the passing years until now it is firmly established that " the court should not dismember the present valid trust because of what may happen after its termination. It is not a case of present testamentary failure." (*Matter of Franklin Trust Co.*, 190 App. Div. 575, 576.) Furthermore, " when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be." (*Kalish* v. *Kalish*, 166 N. Y. 368, 375.) The authoritative reiterations of these rules are literally legion. (*Harrison* v. *Harrison*, 36 N. Y. 543, 547; *Kennedy* v. *Hoy*, 105 id. 134, 137; *Henderson* v. *Henderson*, 113 id. 1, 15; *Matter of Colegrove*, 221 id. 455, 460; *Matter of Hitchcock*, 222 id. 57, 73; *Matter of Horner*, 237 id. 489, 495; *Matter of Trevor*, 239 id. 6, 18; *Matter of Gallien*, 247 id. 195, 203; *Matter of Durand*, 250 id. 45, 53, 54; *Oliver* v. *Wells*, 254 id. 451, 456, 457; *Matter of Terwilligar*, 135 Misc. 170, 182; affd., 230 App. Div. 763; *Matter of Stulman*, 146 Misc. 861, 867; *Matter of Knoll*, Id. 613, 614; *Matter of Cronin*, 147 id. 611, 612; *Matter of Burling*, 148 id. 835, 844.)

Examining the plan of disposition of the present testator as disclosed in these documents, it is obvious that nothing is discernible which inhibits the application of the salvage principle. The primary purpose disclosed is to devote the estate in prescribed proportions to testator's children. This is effected by outright gifts to the daughters and primary trusts for the benefit of the sons. These primary trusts are valid, wherefore the main object of the testamentary plan is capable of effectuation. The secondary purpose of the testator was that the descendants of the sons should receive the benefit of the remainders of the portions of the estates dedicated to the latter. The secondary trusts for their wives were merely collateral considerations. That these collateral inclinations are incapable of effectuation by reason of the statutory inhibition and must, therefore, be excised, in no way involves the necessity of a thwarting of the primary purposes of the testator.

In approaching a determination of the devolution of the remainder of the trust of which Rene was the primary life tenant, it will be of advantage to analyze the potential subject-matter of testator's gift of one-quarter of his estate which he desired to dedicate to this

branch of his family. Testator conceivably had three things which he might make the subject of his donative directions, namely:

1. The beneficial use of the principal for one life in being at his death;

2. The beneficial use of the principal for a second life in being at his death;

3. The possessory enjoyment of the principal following the foregoing gifts.

In the testamentary documents he directed his trustees to devote the first enumerated subject of gift to Rene and of the second to his widow and descendants for the life of the former. Of the third he, personally, made a direct gift to Rene's descendants *per stirpes*, his language being that " Upon the death of my said son, leaving no widow him surviving, or upon the death or re-marriage of such widow, *I give devise and bequeath* the whole of said part, absolutely and in fee, to my son's lawful issue *per stirpes.*" This was not merely a direction to the trustees for payment, but a present gift by the testator himself (*Matter of Woodruff*, 135 Misc. 203, 207), which would take effect as soon as the designated beneficiaries came into being, and the vesting of which would not be postponed until the time of enjoyment arrived, since the adverb " upon " refers merely to the latter. (*Hennessy* v. *Patterson*, 85 N. Y. 91, 101; *Hersee* v. *Simpson*, 154 id. 496, 500; *Connelly* v. *O'Brien*, 166 id. 406, 408; *Roosa* v. *Harrington*, 171 id. 341, 353; *Matter of Fordham*, 235 id. 384, 387, 388; *Ackerman* v. *Ackerman*, 63 App. Div. 370, 372; *Trowbridge* v. *Cross*, 126 id. 679, 683; *Staples* v. *Mead*, 152 id. 745, 749; *Matter of Allison*, 53 Misc. 222, 230; affd., 122 App. Div. 898; affd., 194 N. Y. 540; *Matter of Woodruff*, 135 Misc. 203, 206; *Matter of Leonard*, 143 id. 172, 181; *Matter of Shevlin*, Id. 213, 216.)

It is a familiar principle that the law favors the vesting of estates. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Gurlitz*, 134 Misc. 160, 163; *Matter of Leonard*, 143 id. 172, 176, 179; *Matter of Soy*, Id. 217, 221; *Matter of Duffy*, Id. 421, 424), but this statement, while unquestionable, is but a partial enunciation of the rule, which is that the law favors vesting " *as soon as possible* after the death of the testator." (*Riker* v. *Gwynne*, 201 N. Y. 143, 149; *Bowditch* v. *Ayrault*, 138 id. 222, 228; *Whitman* v. *Terry*, 196 App. Div. 282, 287; *Williams* v. *Williams*, 152 id. 323, 325; *Russell* v. *Furness*, 83 Misc. 499, 504.) As noted in these and countless other authorities, this principle is applicable unless contrary to the evident intention of the testator as disclosed in the will. In applying it, the inquiry thereupon resolves itself into one as to the earliest possible moment when

the identity of the remaindermen was ascertainable and their estates become vested. This could not occur upon the death of the testator, since none were in existence at that time, wherefore the estate must then have been conditionally vested in the alternate remaindermen, who were testator's next of kin, subject to divestment upon the birth of legitimate issue to Rene. When, however, his first child was born, such divestment occurred and the child received an estate in the remainder. Here again, however, since the gift was to a class, namely, the " issue " of Rene, which in a will drawn during the period of the preparation of these documents signified " descendants " (*Matter of Corlies*, 150 Misc. 596, 601), the vesting was merely conditional and was subject to partial divestment by the birth of additional issue on the one hand, or of total defeat on the other, in the event of death before the arrival of the moment when the possibility of alteration of the membership of the class should cease, which would be the moment when beneficial enjoyment could be demanded. (*Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125, 130; *Teed* v. *Morton*, 60 id. 502, 506; *Delaney* v. *McCormack*, 88 id. 174, 183; *Matter of Allen*, 151 id. 243, 247; *Gilliam* v. *Guaranty Trust Co.*, 186 id. 127, 133; *Matter of Leonard*, 218 id. 513, 521; *Metropolitan Trust Co.*, v. *Krans*, 186 App. Div. 368, 376; *United States Trust Co.* v. *Nathan*, 196 id. 126, 130; affd., 233 N. Y. 505; *Matter of Harned*, 138 Misc. 546, 548; *Matter of Ackerman*, 137 id. 910, 915; *Matter of Sheffer*, 139 id. 519, 524; *Matter of Leonard*, 143 id. 172, 183, 184; *Matter of Morningstar*, Id. 620, 628, 629.)

Under the terms of the will, this class of beneficiaries, namely, the descendants of Rene, received two successive benefits. The first in point of time was interest in two-thirds of the income under the void secondary trust for the life of the widow. As this benefit occurred only upon the death of Rene, further accessions to the class of his descendants *per stirpes* then became impossible, and since the time for their sharing in the benefits of the estate had arrived, their interests therein must be deemed to have become vested. At that time, Rene's descendants were his daughters Valerie and Leonie. It follows, therefore, that these two then received vested interests in the estate.

The inquiry of whether or not remaindermen shall receive such gifts upon the deletion of an invalid intermediate trust, like all other branches of testamentery interpretation, rests in final analysis upon the intention of the testator. If the court, at the time the question is presented for adjudication, can say with certainty that it was testator's desire that definitely ascertainable persons should receive the ultimate possessory enjoyment of the gifts, it will be

awarded to them, otherwise it cannot. Under the somewhat unusual conditions here present, the identity of these individuals is apparent in the persons of the children of Rene who became entitled to participation in this trust at the time of his death, and were at once recognized by all parties as those intended by the testator to receive the benefits set forth in the will for Rene's descendants. By reason of the subsequent death of Leonie and the instrument executed under date of May 23, 1930, her interest has passed to her sole descendant, Joyce Evans, who is entitled not only to possession of one-half of the remainder of this trust, but to the accrued and unpaid income on her share.

The final result is that both the primary and secondary purposes of the testator in respect to the portion of the estate dedicated to Rene's branch of the family can be effectuated. He, himself, received its life use, and its remainder is payable to his descendants *per stirpes*. The equality of benefits which he desired and which the law favors (*Matter of Schrier*, 147 Misc. 539, 541; *Matter of Stulman*, 146 id. 861, 878; *Matter of Schrier*, 145 id. 593, 597, 598; *Matter of Grefe*, 140 id. 134, 138; *Matter of Gebhardt*, 139 id. 775, 779; *Matter of Balsamo*, 136 id. 113, 115, 116; *Matter of Berbling*, 134 id. 730, 732) is accomplished and the only direction which has failed is the purely collateral wish of the testator to give a life use in a fraction of the income to the woman who became the wife of his son after the testator's death. To borrow the trenchant phrase of Chief Judge POUND: " The irritation of invalidity has produced, not a cancer, but, at worst, an epidermal callosity which may be harmlessly eliminated. * * * A perfectly good and workable will remains. The result is that, the right to possession having now * * * accrued * * * they are entitled to immediate possession * * * in accord with testator's intention and direction." (*Matter of Trevor*, 239 N. Y. 6, 18.)

The decrees on the previous accountings, of course, render *res judicata* the questions of the propriety of the acts therein disclosed. (*Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 207, 214; *Matter of Soutter*, 105 id. 514, 518; *Joseph* v. *Herzig*, 198 id. 456, 461, 462; *Frethey* v. *Durant*, 24 App. Div. 58, 62; *Matter of Gentry*, 141 Misc. 249, 250; *Matter of Seitz*, 149 id. 526, 530.)

Proceed accordingly.