(156 App. Div. 295.)

## In re YOUNG WOMEN'S CHRISTIAN ASS'N OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. April 11, 1913.)

1. TAXATION (§ 204*)—EXEMPTIONS—STATUTES—CONSTRUCTION.
    Exemptions from taxation of a general nature are not favored, and are strictly construed, and will not be sustained, unless such clearly appears to have been the intent of the Legislature.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321, 322, 325, 332, 333; Dec. Dig. § 204.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—CHARGES— "GENERAL TAX."**

Regular water rates, fixed as authorized by Greater New York Charter 1901, c. 466, § 473, as amended by Laws 1908, c. 382, § 1, and section 909, are in the nature of a "general tax," common on all property similarly situated, though water rates may not be, strictly speaking, taxes, for the purpose of construing an exemption statute.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. § 203.*

For other definitions, see Words and Phrases, vol. 4, p. 3079.]

**3. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—CHARGES —EXEMPTIONS.**

Laws 1887, c. 696, entitled "An act to provide hospitals, orphan asylums, and other charitable institutions with water and remitting assessments therefor," and the amendment thereto by Laws 1890, c. 492, extending the act to houses or homes for the reformation, protection, or shelter of females and industrial homes, do not exempt from regular water rates the building of a Young Women's Christian Association (incorporated under Laws 1848, c. 319, as amended by Laws 1870, c. 51, and accepting Laws 1891, c. 167, authorizing the incorporation of Young Women's Christian Associations), maintained as a home for self-supporting young women, whose payments for rent and board are insufficient to meet the running expenses, which are met by voluntary contributions, especially in the absence of any showing of the amount of the deficiency, and whether it is so great as to make the home essentially a charitable institution.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. § 203.*]

**4. STATUTES (§ 211*)—CONSTRUCTION—LEGISLATIVE INTENT.**

Where the meaning of a statute is doubtful, the title, if expressive, may resolve the doubts by restraining it; for, in ascertaining the intention of a statute, nothing is to be rejected from which aid can be derived.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. § 211.*]

Appeal from Special Term, Kings County.

Mandamus by the Young Women's Christian Association of Brooklyn to require the Department of Water Supply, Gas, and Electricity of the City of New York to remit a charge for water rates on a building. From an order granting a peremptory writ, the Department appeals. Reversed, and motion for mandamus denied.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Curtis A. Peters, of New York City (William R. Wilson, of Brooklyn, on the brief), for appellant.

George C. Lay, of New York City (Howard O. Wood, of New York City, on the brief), for respondent.

BURR, J. This is an appeal from an order directing a peremptory writ of mandamus to issue requiring the department of water supply, gas and electricity of the city of New York to vacate, cancel, and remit an assessment or charge for water rates upon a building situated on the northwest corner of Schermerhorn and Nevins streets, in the borough

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Brooklyn, belonging to and under the management and control of the Young Women's Christian Association of Brooklyn.

Relator was incorporated February 23, 1888, under the provisions of a statute entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies." Laws of 1848, c. 319. This act has been from time to time amended. The only amendatory act passed prior to its incorporation, relied upon by relator as affecting its status, was passed in 1870 (Laws of 1870, c. 51), and authorized the incorporation under the general act of—

"any society for the purpose of establishing and maintaining any educational institution or chapel, or place of public worship, or any parsonage, rectory or official residence of any bishop, pastor or minister of any Christian church or association."

In 1891 an act was passed entitled "An act for the incorporation of Young Women's Christian Associations." Laws of 1891, c. 167. Among other things, the act provided that:

"Any twenty or more women being citizens and residents of this state and being desirous of associating themselves for the improvement of the spiritual, mental, moral and physical condition of young women by meetings for public worship, by academical instructions, by the maintenance of a public library and reading room, and *by such other means not inconsistent with the objects of the association as its executive board may devise,*"

—may make, sign, acknowledge, and file a certificate in the form therein prescribed, and thereupon become a body politic and corporate. The same act provided that:

"Any Young Women's Christian Association heretofore organized under any law of this state, for all or any of the objects specified in this act, and now existing, may accept the provision of this act."

Upon filing the certificate therein provided such association should—

"thenceforth be an incorporation under and with all the powers and privileges of this act." Id. § 4.

This act went into effect April 6, 1891, and on June 6th of that year relator accepted the provisions of the said act by filing the said certificate. In the petition upon which this application is based, relator states the purpose of the association, which is—

"to promote the temporal, mental, moral, and spiritual welfare of young women, particularly of those dependent upon their own exertions for support."

It further sets forth that it maintains a central building, located at Schermerhorn street and Flatbush avenue, in the borough of Brooklyn, and branch establishments elsewhere in said borough, where various activities for the education, improvement, and welfare of young women are carried on, to wit, instruction in Bible and mission study, stenography, typewriting and bookkeeping, English, music, dressmaking, white sewing, embroidery, handicraft and design, basket making and millinery, nursing, cooking, and other branches of women's education. It also—

"conducts religious services and maintains classes for religious and moral instruction and a department for the purpose of finding employment and safe boarding places for self-supporting young women."

An application to cancel the charges for water rates upon its central building was denied. Matter of Young Women's Christian Association, 141 N. Y. Supp. 260 (opinion of Kelly, J., at Special Term, filed August 16, 1912). Relator seeks to differentiate the present application from the one then considered, by reason of the following facts: It alleges in its petition:

"That for several years last past the said association has conducted and maintained a separate house or home for the protection and shelter of young women, entirely separate and apart from the main building and branch establishments above referred to. * * * That the young women entitled to the privileges of said house or home are active members of the association, who pay annual dues of one dollar each. That the young women who have board and lodging in said building pay a small sum for the use of rooms and board, but that the entire amount received from the occupancy of said building for rent or for board is less than the cost of the maintenance of the home, and the annual deficiency is made up by voluntary contributions."

[1] We think that relator has failed to establish its right to the exemption claimed. While a different rule may prevail in the case of a special tax, reaching only to special cases and affecting only a special class of persons (Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948, affirmed on opinion below 195 N. Y. 572, 88 N. E. 1125), exemptions from taxation of a general nature are not favored, and are to be strictly construed. They will not be sustained, unless such clearly appears to have been the intent of the Legislature. People ex rel. Andrews v. Cameron, 140 App. Div. 76, 124 N. Y. Supp. 949, affirmed 200 N. Y. 585, 94 N. E. 1097; People ex rel. Savings Bank v. Coleman, 135 N. Y. 231, 31 N. E. 1022; People ex rel. Newburgh Savings Bank v. Peck, 157 N. Y. 51, 51 N. E. 412.

[2] While water rates may not be, strictly speaking, taxes, for the purpose of construction of an exemption statute, we think that regular water rates must be deemed to be in the nature of a general tax, common upon all property similarly situated. Greater New York Charter (Laws of 1897, c. 378, as revised by Laws of 1901, c. 466) § 473 (as amended by Laws of 1908, c. 382, § 1), and section 909.

[3] Relator relies for its exemption upon an act passed June 25, 1887, entitled "An act to provide hospitals, orphan asylums and other charitable institutions in the city of New York with water, and remitting assessments therefor." Laws of 1887, c. 696. The scope of the act as originally adopted was limited to "charitable institutions," and the class of charitable institutions specifically referred to therein were hospitals, orphan asylums, and homes for the aged, or an institution having for its object the care, support, or education of orphans, or of the sick, infirm, or aged. The act of 1887 has been from time to time amended. Laws of 1890, c. 492; Laws of 1894, c. 672; Laws of 1895, c. 459; Laws of 1896, c. 852; Laws of 1902, c. 605; Laws of 1906, c. 440; Laws of 1907, c. 135; and Laws of 1911, c. 686. By these various amendments the beneficial provisions of the original act were extended in 1890 to "houses or homes for the reformation, protection or shelter of females and industrial homes." It is upon this amendment that relator relies. By various subsequent acts its provisions were extended to "benevolent or charitable corporations, owning or

maintaining free public baths, to "dispensaries," to "day nurseries or corporations or societies for the care and instruction of poor babies and needy children, free school societies or free circulating libraries," to "social settlements," to "veteran firemen's associations," to real estate owned by "any religious corporation located in the city of New York, held, dedicated and used exclusively as a place of public worship," and to "benevolent or charitable corporations owning or maintaining an institution for medical research."

It will be observed from the title of the original act, as well as the specific provisions thereof, that its scope was limited to organizations essentially eleemosynary or charitable in character. With one possible exception, in each instance where the scope of the act was to be extended beyond organizations thus fairly to be classified, as in the case of religious corporations (Laws of 1907, c. 135), or institutions for medical research (Laws of 1911, c. 686), the institutions thus to be affected were specifically referred to, both in the title and in the enacting portions of the amendatory acts. The only exception to this general rule was in the case of the veteran firemen's association. Laws of 1906, c. 440. Although the sufficiency of this act to grant exemptions to these organizations has been considered by this court (People ex rel. Veteran Volunteer Firemen v. Metz, 120 App. Div. 565, 104 N. Y. Supp. 1115), the point that such organizations were not within the general scope of the original act, nor referred to in the title thereof, and that the title to such act was not amended so as to enlarge its scope, nor was the organization specifically referred to in the title of the amendatory act, seems not to have been called to the attention of the court, or considered.

[4] The act of 1890 upon which relator relies is deficient both in amending the title of the act so as to enlarge its general scope, or specifically designating in the title of the amendatory act an organization not included within the general title of other charitable corporations. If the meaning of a statute is doubtful—

"the title, if expressive, may have the effect to resolve the doubts by * * * restraining it; * * * for in ascertaining the intention nothing is to be rejected from which aid can be derived; therefore the title of an act may claim a degree of notice, and is entitled to its share of consideration." Sutherland on Statutory Construction, § 210.

It is not necessary to go so far as we are urged to do by the learned corporation counsel, and to hold that the words in the act of 1890, "houses or homes for the reform, protection or shelter of females," must be limited to homes for the wayward, or those who have manifested a tendency to become such. We do think, however, that the houses or homes therein referred to are such as are essentially charitable in character. If in the original act as passed, with a title stating that it referred to hospitals, orphan asylums and *other* charitable institutions in the city of New York (see title of chapter 696, Laws of 1887), in specifying the particular institutions to be benefited thereby in addition to hospitals, orphan asylums, and homes for the aged, there had also been specified houses or homes for the reformation, protection, or shelter of females, it would hardly be open for argument that

the provisions of the act were limited to such houses and homes as might be fairly included within the general description of "charitable institutions." The situation by reason of the form of the amendatory act is precisely the same as though such had been the case.

Relator does not claim that the real property for which it seeks exemption from water rates is of that character. On the contrary, in stating the purpose of its organization, it specifies as the objects of its beneficial work young women, particularly those dependent upon their own exertions for support, and asserts that its department which has the purpose of finding safe boarding places seeks these for "self-supporting young women." While it is true that there is also a statement that the house which it does maintain is not entirely supported by the amounts received from the inmates for rent *or* (and?) for board, and that the annual deficiency is made up by voluntary contributions, there is an utter failure to state the extent of this deficiency, and whether it is so great as to make the home essentially a charitable institution, or whether it is of a negligible character. Unless the relator clearly establishes that it is thus to be classified, we think that as the statute now stands it is not entitled to exemption. It may be equally as deserving as some of the institutions enjoying its benefits, perhaps much more so; but the remedy in the first instance is by application to the Legislature, and not to the courts.

It follows that the order granting the application for a peremptory writ of mandamus must be reversed, and the motion denied, as matter of law, and not in the exercise of any discretion. Under the circumstances, however, no costs will be awarded. All concur.

