## In the Matter of the Estate of MAX REISS, Deceased.

Surrogate's Court, Kings County, January 19, 1931.

*Douglass Newman*, for the executors.

*Leon Bleecker*, for Royal Consul General of Roumania.

*Albert D. Schanzer*, special guardian, for Stephen W. Reiss and others, infants.

WINGATE, S. The sole question here presented for determination arises upon the objection by the Consul General of Roumania to a proposed direction in the final decree that the distributive share in the estate of Fannie Margulescu amounting to $33,195.87 should be paid to her and not to such Consul General.

Following the service of the citation on this accounting, notice of appearance was served on behalf of the Consul General and the legatee by Leon Bleecker, based on an authorization executed by the ·Chancellor of the Royal Consul General of the Kingdom of Roumania, who undertook to act for Fannie Margulescu as a subject and resident of the Kingdom of Roumania.

Following this, there was duly filed in this court a duly executed authenticated power of attorney executed by the legatee in person, authorizing Elias Reiss, of New York city, to appear and act for her in this matter.

The question is, therefore, squarely presented as to whether the provisions of the treaty between the United States and the Kingdom of Roumania, which in general terms authorizes a Roumanian Consul General to represent his nationals, is entitled to precedence over a power of attorney to another individual executed by such national in person.

In support of his contention the Consul General cites article IX of the Treaty of June, 1881, which reads as follows: " Consuls general, consuls, vice-consuls and consular agents shall have the right to address the administrative and judicial authorities, whether in the United States, of the Union, the States or the municipalities, or in Roumania, of the State, the district, or the commune, throughout the whole extent of their consular jurisdiction, in order to complain of any infraction of the treaties and conventions between the United States and Roumania, and for the purpose of protecting the rights and interests of their countrymen. If the complaint should not be satisfactorily redressed, the consular officers aforesaid,

in the absence of a diplomatic agent of their country, may apply directly to the government of the country where they exercise their functions."

It must be noted, however, that the 2d paragraph of article XV of this treaty reads as follows: " Consuls-general, consuls, vice-consuls and consular agents shall have the right to appear, personally or by delegate, in all proceedings on behalf of the absent or minor heirs or creditors, until they are duly represented."

These two provisions must, of course, be construed together and such joint consideration must result in a determination that, whereas, by reason of the terms of the treaty, the Roumanian Consul General is entitled to represent his nationals in all matters where they have not specifically appeared; that personal appearance or its equivalent, appearance by attorney in fact, results in the superseding by the individual or personal attorney of the Consul General as to all matters ·or interests belonging to such Roumanian national.

It must, therefore, follow that the provision inserted in the proposed decree for the payment of the distributive share of Fannie Margulescu to her personally, is correct, and that decree is accordingly signed.