In the Matter of the Estate of JOSEPH COHEN, Deceased.

Surrogate's Court, Kings County, May 9, 1933.

*Belfer & Belfer*, for the petitioner.

*Murray A. Harris*, for Minnie Cohen, deceased.

WINGATE, S. It is proverbial that hard cases make bad law. The facts of the controversy at bar, superficially at least, seem to furnish an instance of hardship in connection with which the applicant seems quite insistent that a result having evil general consequences should be adopted. When the case was first presented for adjudication, the court successfully withstood such temptation as may have existed in this direction (147 Misc. 330). The present application seeks a re-examination of that result.

The petition is one for the removal of decedent's widow as an administratrix of his estate, made by one who is not a distributee and to whom no debt was owing by the decedent, but who was joined as a coadministrator on the original petition of the widow for her convenience.

On the hearing the court was impressed with the fact that the widow has adopted an arbitrarily antagonistic attitude toward the coadministrator and has refused or neglected to perform various primary duties for the proper administration of the estate, which might well bring her within the terms of section 99 of the Surrogate's Court Act. In spite of this fact, the court felt constrained to deny the application for removal since the applicant failed to demonstrate that he was a person entitled, within the provisions of section 99 and subdivision 11 of section 314 of the Surrogate's Court Act, to make such an application.

On this application for a rehearing the coadministrator cites a number of authorities which he maintains are decisive of his right in this regard. Although the court has approached their consideration with the most open mind imaginable, it is unconvinced that they furnish the requisite basis for causing it to disregard the plain implications of the pertinent statutory enactments. *Hassey* v. *Keller* (1 Dem. 577) denied an application for the removal of the administrator. Whereas the syllabus contains a dictum that a coadministrator, merely by reason of his position, might maintain such a proceeding, there is not a line or word in the opinion upon which to base any such conclusion. *Newhouse* v. *Gale* (1 Redf. 217) was an application for revocation of letters to executor made by a legatee under a prior will which had been denied probate. An appeal from such denial was pending, and the court held that the status of the petitioner as a legatee under the will was still presumptively in effect. *Sperb* v. *McCoun* (110 N. Y. 605) in no way involved the question of revocation, being concerned merely with the right of an administrator to recover from a removed coadministrator upon a joint bond. It did appear in that case that the coadministrator had been removed in a previous proceeding on the petition of the plaintiff in this action, but it was no where demonstrated that the latter did not bear the usual relationship of a distributee to the estate and in view of the rarity of the appointment of one who has no distributive rights, no presumption can be indulged that he occupied this unusual position. *Matter of Szabo* (143 N. Y. Supp. 678, not officially reported) and *Matter of Vukelic* (Id. 679, not officially reported) both concerned applications by foreign consuls representing their nationals under most favored nation treaty provisions, for revocation of letters. It is elementary that under such circumstances a consul, unless superseded by a direct power of attorney (*Matter of Reiss*, 138 Misc. 845, 847), is for all intents and purposes in this court the *alter ego* of such national. The effect in these cases, therefore, was that the application was made by a distributee.

The results of the applications in *Matter of McMullen* (85 Misc. 661) and *Matter of Gallagher* (146 id. 112) are unquestionably sound. In both, letters of administration had been granted to persons representing themselves to be widows of the respective decedents, when they were not such. The letters were properly revoked for the obvious and sufficient reason that the results of the applications were to demonstrate that the primary fact upon which alone rested the jurisdiction of the surrogate to grant the letters, did not exist. Gross imposition had been practiced upon the court in the first instance, and upon its demonstration, by whatever means, it became its primary duty to undo the wrong, no matter what the source of the demonstration. This power arises, however, not by reason of the provisions of section 99, but in consequence of the express authority of subdivision 6 of section 20.

The extended discussion at pages 664 to 666 of the *McMullen* case was entirely unnecessary to the decision, and being by a court of co-ordinate jurisdiction and not conforming to the conception of this court respecting the law applicable in the present case, the *rationes decidendi* there adopted cannot be followed.

This court is disinclined to extend its discussion of the question of whether the petitioner is a " person interested " in the estate within the terminology of the act, since this question was fully considered in its former opinion. Suffice it to note in this connection that the entire policy of the law is to grant rights in respect to the administration of the estate of an intestate only to those who by reason of blood relationship or contractual or quasi-contractual dealings with the intestate, have rights to share in his net estate. (*Matter of Gant*, 142 Misc. 446, 448.) The present petitioner is not within the class envisaged by the enactment, which is drawn in reference to the usual situation and not to the one case in a million here presented.

As a strict matter of fact, there is nothing here involved which warrants any such concern for the safety of the estate as to justify the court in establishing an untoward precedent which might tend to unsettle the law. The petitioner, alone, seems concerned about the affairs of the estate, and his extreme anxiety to oust the widow on this application argues ill regarding his confidence in his ability to persuade any creditor or distributee of the propriety of removing the one to whom the statute has given a preferred right to the administration of her husband's effects. If the affairs of the estate are really in jeopardy, it should be readily possible for him to persuade some one to whom the statute has given the right to apply to act in the premises.

Whether or not section 222 of the Surrogate's Court Act, relating

to creditors of the estate, could be construed broadly enough to include the petitioner by reason of his having a claim for " expenses of administration " under subdivision 3 of section 314, is presently academic, since it has not been demonstrated that he has any claim of this variety. It is primary that academic questions will not be decided. (*Matter of Ayres,* 141 Misc. 236, 239; *Matter of Richman,* 142 id. 103, 108; *Matter of Knoll,* 146 id. 613, 615.)

Under ordinary circumstances, it is the policy of the court to impose personal costs against an unsuccessful applicant for a rehearing in cases where the question has been fully considered on the former application and the rehearing produces no change in the result. In the present instance an exception will be made to this rule, in view of the apparent earnestness of the petitioner, in spite of the feeling of the court that his enthusiasm is worthy of a better cause.

The rehearing is, therefore, granted and the motion is denied. Proceed accordingly.