In the Matter of the Estate of HUGH O'DONNELL, Deceased.

Surrogate's Court, Kings County, November 19, 1934.

*Robert J. Delaney*, for the executor.

*Harry M. Peyser*, for the State Tax Commission.

WINGATE, S. The subject-matter of the present litigation is of personal moment to every civil employee of the city of New York and to all others in a similar position throughout the State. In brief, it concerns the taxability on death of the sums which may be payable to their estates from city pension and retirement funds.

The particular position occupied by this decedent in the service is not disclosed by the record. Inferentially he was one of the great army of city employees in the civil service, since it appears that his executor received from the city of New York the sum of $11,886.63 for optional death benefit under the civil service retirement system. This system was erected by chapter XXVI of the Greater New York Charter, which, in as far as presently pertinent, was enacted by chapter 427 of the Laws of 1920.

The executor contended, and the tax appraiser ruled, that this sum was exempt from the imposition of any estate tax. The State Tax Commission has appealed from the *pro forma* order effectuating this determination.

The basis of this result is found in the wording of section 1723 of chapter XXVI of the charter which reads:

" Exemption from execution. The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, any right accrued or accruing to any person under the provisions of this chapter and the moneys in the various funds created under this chapter, are hereby exempt from any state or municipal tax, and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this chapter specifically provided."

Since a benefit of the variety here received by the executor is in the nature of insurance payable to an estate, it is obvious that it would be taxable except for the charter provision quoted. (*Matter of Knoedler*, 140 N. Y. 377, 380; *Matter of Haedrich*, 134 Misc. 741, 743, 744; affd. on opinion of this court, 230 App. Div. 763; affd., 256 N. Y. 608.)

The section was held sufficient warrant for exempting moneys received from such a source from the operation of the Transfer Tax Law formerly in effect in the State (*Matter of Morrison*, 130 Misc. 438, 440; *Matter of Fischer*, 132 id. 204, 205; aftd., 223 App. Div. 887), but it is the contention of the State Tax Commission that a different rule is applicable under the Estate Tax Law, enacted in chapter 710 of the Laws of 1930.

This position is sustained by the brief memorandum of Surrogate FOLEY in *Matter of Waite* (N. Y. L. J. Jan. 22, 1934). While the court fully concurs in the statement of the respondent that this decision is not " binding " on the court, since a judgment of a court of co-ordinate jurisdiction in a different case is never a conclusive precedent (*People ex rel. Battista* v. *Christian*, 131 Misc. 411, 413; affd., 249 N. Y. 314; *Matter of Cohen*, 147 Misc. 570, 572; *Matter of Guarneri*, 149 id. 759, 760), any result of this distinguished jurist

is deserving of the most careful consideration. Unfortunately in this instance no more than the bare conclusion is stated, wherefore, in view of the earnest and able arguments of the present litigants, an investigation into the merits of the controversy is in order.

The contentions of the executor in opposition to the position of the Tax Commission that the special exemption of section 1723 has been repealed, are classifiable under two general heads, *first*, that the Legislature possessed no such power of repeal without constitutional violation; and *second*, that no act of repeal was accomplished.

On the first point, the argument is advanced that the city of New York, by reason of the section of exemption, entered into a contract with a prospective employee to remunerate him at a specified rate, and in addition to give him certain enumerated benefits upon the termination of his service, as set forth in chapter XXVI of the charter, and that the diminution of these benefits by the imposition of a tax thereon would effect an infringement of article 1, section 10, of the Federal Constitution which provides that " No State shall * * * pass any * * * Law impairing the Obligation of Contracts."

The argument thus advanced is not novel, and has frequently been made the subject of adverse adjudication by courts of last resort. One of the earliest is found in *Salt Company* v. *East Saginaw* (80 U. S. [13 Wall.] 373), in which the court observes (at p. 379): " General encouragements, held out to all persons indiscriminately, to engage in a particular trade or manufacture, whether such encouragement be in the shape of bounties or drawbacks, or other advantage, are always under the legislative control, and may be discontinued at any time."

The general theory in this regard is further elaborated by the same ultimate authority in *Wisconsin & Michigan Railway Co.* v. *Powers* (191 U. S. 379), in which the court states (at p. 387): " In announcing its policy and providing for carrying it out it may open a chance for benefits to those who comply with its conditions, but it does not address them, and therefore it makes no promise to them. It simply indicates a course of conduct to be pursued, until circumstances or its views of policy change. It would be quite intolerable if parties not expressly addressed were to be allowed to set up a contract on the strength of their interest in and action on the faith of a statute, merely because their interest was obvious and their action likely, on the face of the law."

The latest pertinent observation by the United States courts on this subject is contained in *United States* v. *United Shoe Machinery Co.* (264 Fed. 138; affd., 258 U. S. 451), in which it is said (at p. 151):

" a statute addressed to no particular person does not constitute a contract, and therefore creates no vested right, and may be repealed at any time."

The reason for this rule is mirrored in *Seton Hall College* v. *South Orange* (242 U. S. 100, 106) as follows: " To all claims of contract exemption from taxation must be applied the well settled rule that, as the power to tax is an exercise of the sovereign authority of the State, essential to its existence, the fact of its surrender in favor of a corporation or an individual must be shown in language which cannot be otherwise reasonably construed, and all doubts which arise as to the intent to make such contract are to be resolved in favor of the State."

These views have received frequent reiteration in the courts of this State, especially pertinent consonant pronouncements being contained in *People* v. *Roper* (35 N. Y. 629, see particularly pp. 632–638); *Brearley School* v. *Ward* (201 id. 358, 368, 373, 375, 376); *Matter of Friel* (101 App. Div. 155, 158; affd., 181 N. Y. 558), and *Myers* v. *Moran* (113 App. Div. 427).

The result, therefore, in such a case is that any inducement to entry into the public service such as is contained in the enactments of the civil service retirement system, is in no sense a contract with any particular individual. It is a pure gratuity and " Its continuance is a matter of public policy only; and those who rely on it must base their reliance on the free and voluntary good faith of the legislature." (*Salt Company* v. *East Saginaw* (80 U. S. [13 Wall.] 373, 378.)

The power of the Legislature to abrogate the tax exempt nature of payments under the retirement system is accordingly undebatable, and there remains for determination, therefore, merely the question of whether, in the present instance, it has exercised this authority.

The precedents cited by the Tax Commission to the effect that statutes purporting to allow special exemptions from taxation are subject to a strict construction (*Matter of Young Women's Christian Assn.*, 156 App. Div. 295, 297; *People ex rel. Mizpah Lodge* v. *Burke*, 228 N. Y. 245, 247, and *Village of Watkins Glen* v. *Hager*, 140 Misc. 816, 820) have no present relevancy. There is here no assertion that any exemption of the fund in question is contained in the present taxing act, but that a previously existing and judicially recognized exemption was abrogated by that act.

The purpose in the enactment of the Estate Tax Law is clearly envisaged in the statement of the chairman and vice-chairman of the Commission to Investigate Defects in the Laws of Estates, prefixed to the proposed text of the statute enacted (Leg. Doc. 1930, No. 69, p. 195). The object, the attainment of which was

desired, was the substitution of a single, all-embracing system of death taxation by the State, consonant with the Federal system, which should supersede the outworn and cumbersome laws previously in force. (Cf. *Matter of Lauderdale,* 150 Misc. 214, 216.)

Under such circumstances, the principles stated by the Court of Appeals in *Peterson* v. *Martino* (210 N. Y. 412, 418, 419) become controlling. It is said that " In such cases the very purpose of the later legislation is to substitute uniformity for diversity. This fundamental purpose will be upheld, even though the earlier statutes are not mentioned in the schedule of laws repealed. * * * The very purpose of the Tax Law was to supplant the earlier statutes which had become so numerous and confusing that they could with difficulty be collated. To this end it declared a comprehensive system, superseding the scattered and fragmentary laws that preceded it. We think it important that this view of its operation be maintained.'

That the policy of the Legislature to conform the State Estate Tax Law to that of the Federal authorities is to be strongly supported is indicated by the recent determination of the Court of Appeals in *Matter of Weiden* (263 N. Y. 107) where that court, for the promotion of this end, in substance reversed or modified a series of its own determinations dating back over almost a century.

The rule of law exemplified by the foregoing excerpt from *Peterson* v. *Martino* goes far beyond that which is necessary of application in the case at bar. There the question primarily turned upon the implication of a repeal of an earlier statute by a later one of general scope. In the present instance any doubt of the intention of the Legislature to foreclose the assertion of previous special exemption laws is removed from the realms of conjecture. Sections 249-q and 249-s of the Tax Law expressly set forth the exemptions and credits which may be deducted in determining the net estate, the transmission of which on death is subject to the tax imposed, and then proceeds to eliminate the possibility of further deductions by the following unmistakable language:

" § 249-kk. Exemptions in other laws not applicable. No exemption provided for in any other article of this chapter or any other law of this state shall be construed as being applicable in any manner under this article."

Obviously, section 1723 of the New York City Charter enacted by chapter 427 of the Laws of 1920 comes within the description of " any other law of this state." It provided for an exemption. It results with syllogistic inevitableness from the express fiat of the Legislature that the exemption therein contained is not " applicable in any manner " in a determination of the amount due the State

under the Estate Tax Law as a condition to the devolution of the property of this estate. The deduction by the appraiser of the sum of $11,886.63 received by the executor from the civil service retirement system was, therefore, erroneous. His determination is, therefore, reversed and the matter is remitted to him for further action in accordance with this decision.

Enter order on notice accordingly.