In the Matter of the Estate of ISIDORE KUPFERSHMID, Deceased.

Surrogate's Court, Kings County, February 24, 1936.

*Edward I. Herbst* [*Samuel B. Herbst* of counsel], for the coexecutor Max Goldfarb and petitioner for construction of will.

*Edward I. Herbst* [*Samuel B. Herbst* of counsel], for the Public National Bank and Trust Company, coexecutor, who submit to determination without asserting any particular construction.

*Martin D. Flomenhaft,* for the respondents Lillie Kupfershmid, niece; Mollie Kupfershmid, mother; Bennie Kupfershmid, brother; income beneficiaries of trusts created under the will.

*Joseph Cohn,* special guardian for infant children of decedent, residuary legatees.

WINGATE, S. This proceeding for testamentary interpretation is remarkable solely by reason of the fact that the contending parties have filed briefs aggregating ninety-nine pages in respect to the devolution of an estate whose total avails, subject to costs and expenses of accounting, are said to amount only to about $4,000.

The terms of the instrument, which is dated April 21, 1927, are attacked on the ground of their alleged infringement of section 11 of the Personal Property Law. The items of the will in question are numbered from second to eighth, inclusive. Their directions, in summary, are as follows:

Item second erected a trust with a principal of $1,000, the income payable to testator's named niece for life or until marriage and principal payable to her on marriage, or, if she failed to marry, to be added, on her death, to the residuary trust created by item fifth of the will.

Item third erected a trust with principal of $10,000 with income payable to testator's parents for life, with direction that if the income therefrom did not amount to ninety dollars per month during the life of both, or sixty dollars per month during the life of the survivor, any deficiency should be made up from the income of the residuary trust during the life of testator's wife, and from the $10,000 principal of this trust after her death; any principal of this trust remaining on the death of the survivor of the parents, to be added to the residuary trust.

Item fourth erected a trust with a principal of $3,000 with income payable to testator's brother for life, with direction that if such income did not amount to twenty-five dollars per month, any deficiency should be made up from the income of the residuary trust during the life of the testator's wife, and from the $3,000 principal of this trust after her death; any principal of this trust remaining on the death of the brother to be added to the residuary trust.

Item fifth erected the remainder of the estate into a trust with the income thereof, subject to the deductions provided in items third and fourth, payable to testator's wife.

Item sixth directed that, subject to the veto power of the wife, $10,000 of the principal of the trust erected by item fifth should be

paid to each of testator's children on their respectively attaining the age of twenty-four or prior marriage.

Item seventh stipulated that the trust under the fifth item should terminate on the death of the wife, whereupon the principal shall be divided into as many parts as there were surviving children or representatives of deceased children, and one part paid to each such branch, subject to the further limitation that if any of such children of testator had not then attained the age of twenty-four, his portion should be held in trust for him until his attainment of such age.

Item eighth directed that if the widow remarries, the residuary trust shall terminate and the principal thereof shall be divided into equal parts for the wife and surviving children, the portions of the children who have attained the age of twenty-four to be paid to them outright, the portions of the children who have not attained the age of twenty-four to be held in trust for them until they reach that age, and the portion of the widow to be held in trust for her for life.

The testator was survived by the named niece and brother, by both parents, the wife and three children.

It seems apparent that testator's fortunes had suffered material impairment between the date of the will and his death on October 29, 1929, but whereas those contending for the total invalidity of the will pay lip service to the familiar principle that events occurring subsequent to the date of execution of the testamentary document may not be considered in an interpretation thereof (*Matter of McCafferty*, 142 Misc. 371, 373, 374; affd., 236 App. Div. 678; *Matter of Rowland*, 155 Misc. 826, 832, and authorities cited), much of their argument is based upon the practical inadvisability of permitting the will to stand in view of the reduced size of the estate, and amounts, in effect, to the contention that if the testator had realized how small his estate would be, he would have directed different devolution. The court is accordingly adjured to perform this act for him.

Such a procedure, if adopted, would be subversive of all basic principles of testamentary interpretation. If the nature and effect of the directions is such that the court would declare total or partial invalidity if the estate presently distributable were sufficient to carry all of the testator's obvious desires into effect, a like result should presently be reached. If, on the other hand, such a result would not follow under those circumstances, the fact that the property of the decedent at his death was depleted beyond his expectations at the time the will was executed, would not warrant the adoption of a diverse course.

If, as is contended by certain parties, some of the trusts are bad, either by reason of a suspension of the power of alienation for exceeding two lives in being at the testator's death, or in consequence of remoteness of vesting, the primary inquiry is as to whether the various parts of the testamentary plan are so interwoven as to make the deletion of a part result in the unbalancing of the whole. (*Matter of Enright*, 139 Misc. 192, 199; *Matter of Perelman*, 148 id. 906, 908.) The court is familiar with no modern authority in which such a condition has been found to exist in which the will did not either actually or in essence divide the estate into proportionate parts for favored beneficiaries. In such a situation it is sometimes reasonably arguable that proportionate distribution was the basic wish of the testator, which, if incapable of effectuation by reason of statutory invalidity, would result in the destruction of the testator's dominant wish. Such cases were *Matter of Douglass* (120 Misc. 193) and *Matter of Lyons* (154 id. 368; modfd., 245 App. Div. 548), upon which certain parties so greatly rely.

In the will at bar this condition does not exist. In the first three of the questioned gifts the testator gave merely the life use of a certain sum of money to specified individuals, and provided, in essence, that, upon their respective deaths, what was left of it, if anything, should go to persons in a different classification. Even though the ultimate gifts of the remainders, if there chance to be any, are incapable of effectuation in consequence of statutory inhibition, this would not, under the modern doctrine of salvage, warrant a destruction of the whole.

Absent, the somewhat unusual circumstances of intimate interlacing of provisions, which is here clearly missing, " The court should not dismember the present valid trust because of what may happen after its termination. It is not a case of present testamentary failure." (*Matter of Franklin Trust Co.*, 190 App. Div. 575, 576; see, also, *Matter of Terwilligar*, 135 Misc. 170, 182; affd. on opinion of this court, 230 App. Div. 763; *Matter of Drake*, 153 Misc. 691, 692; affd., 246 App. Div. 758; *Matter of Milhau*, 151 Misc. 283, 288; *Matter of Moores*, 155 id. 471, 474.)

In the case of each of the trusts under items second, third and fourth, the primary trust is unquestionably good. Whether or not there will, as a matter of fact, ever be any remainder of these trusts for enjoyment by any one, is extremely problematical and dependent on eventualities which are presently indeterminable. The trust for the niece is to terminate upon her marriage with the principal then absolutely payable to her. Any consideration of the devolution of the remainder to others, based on the speculation of whether or not she will marry is presently premature. Similar

considerations apply to the remainders of the trusts for the parents and brother. If the widow predeceases them, there is every probability that the reduced principals of these trusts will be promptly consumed in the making of the specified minimum payments. In this contingency, there would be no remainder interest for further devolution. On existing facts, the residuary trust is inoperative for the reason that there is no present prospect that it will ever receive anything of value to serve as principal. All questions of devolution beyond the valid primary life estates are, therefore, presently academic and speculative, forming no proper basis for decision. (*Matter of Mount,* 185 N. Y. 162, 170; *Matter of Franklin Trust Co.,* 190 App. Div. 575, 577; *Matter of Cohen,* 147 Misc. 570, 573; *Matter of Innerfield,* 153 id. 706, 711; *Matter of Hoole,* 156 id. 821, 823.)

It follows that all which is presently determinable is that the primary life estates under the trusts are valid. All further questions must be held in abeyance until the contingencies upon which they depend have eventuated.

Enter decree on notice.