In the Matter of the Estate of CAROLYN A. NEWTON, Deceased.

Surrogate's Court, Westchester County, December 24, 1941

*Frank Sowers* [*Stanley S. Sweitzer* of counsel], for the executor, appellant.

*Jerome M. Hirsch* [*Thomas P. McLaughlin* of counsel], for the State Tax Commission, respondent.

*William C. Chanler, Corporation Counsel* [*Nicholas Bucci* of counsel], for the Teachers' Retirement System of the City of New York, *amicus curiæ*.

*Condon & Conroy* [*John H. Conroy* of counsel], for the Joint Committee of Teachers Organizations, *amicus curiæ*.

MILLARD, S.  This decedent died a resident of Westchester county on May 29, 1940, leaving a last will and testament which was duly admitted to probate by this court on June 5, 1940, and letters

testamentary were thereupon issued to the executor therein named. Thereafter and pursuant to an application of the executor the matter of appraisal of the assets of the estate for tax purposes was duly referred to the official appraiser in and for the county of Westchester. The report of such appraiser was filed in this office on April 11, 1941, and on April 15, 1941, a *pro forma* order was made and filed herein fixing the tax at $136.89. The executor has duly appealed from said order on the following grounds that: " The inclusion in the gross estate of the sum of $9,541.64 paid by the Teachers' Retirement Fund to Albert B. Newton, whom deceased, a teacher in the Public Schools of the City of New York, had in her lifetime duly designated in writing filed with the Teachers' Retirement Board, as the beneficiary to receive all benefits due her upon her death from the Teachers' Retirement Fund, was improper and unwarranted."

It appears uncontroverted that at the time of her death, and for many years prior thereto, the decedent was a teacher in the public schools of the city of New York. Although she had been employed by the city intermittently prior to the year 1926, she did not become a member of the Teachers' Retirement System of the City of New York (hereinafter referred to as the System) until April 28, 1926. In accordance with the provisions of the governing legislation and pursuant to actuarial tables, her rate of contribution was fixed at 13.85 per cent of her salary. Prior to her death decedent executed in the manner prescribed by the System an instrument in writing naming and designating her aforementioned son, Albert B. Newton, as her sole beneficiary to receive the benefits and credits due her from the System in the event she died before retiring. Decedent having died in active service, the System paid to her said designated beneficiary the sum of $16,075.62 which it is conceded is made up as follows:

1. $9,541.64, representing accumulated deductions from decedent's salary with interest.

2. $6,533.98, representing the contribution by the city of New York as a death benefit based upon decedent's length of service.

The appraiser treated the contribution made by the city of New York in the sum of $6,533.98 as insurance and since it was payable to a named beneficiary and amounted to less than $40,000, he did not include it in the gross taxable estate. (Tax Law, § 249-r, subd. 9.) He did include, however, as a taxable asset that portion of the fund paid to the designated beneficiary representing the accumulated deductions made from decedent's salary. The sole question, therefore, presented for determination is whether or not under the particular circumstances of this case, as above outlined,

the aforesaid accumulated salary deductions are subject to the imposition of the estate tax as defined by section 249-r of the Tax Law.

The legislation establishing and regulating the Teachers' Retirement System of the City of New York is now found in title B of chapter 20 of the Administrative Code of the City of New York. (Laws of 1937, chap. 929, effective Jan. 1, 1938.) Except for minor changes not here relevant this legislation is a re-enactment of similar legislation contained in section 1092 of the Greater New York Charter. (Laws of 1901, chap. 466, as amd. by Laws of 1917, chap. 303.) Membership in the System is compulsory for all persons employed as teachers in the public schools of the city of New York, including the College of the City of New York. The fundamental purpose of this legislation is to provide a simple and economical means of creating a fund with which to pay pensions to those members of the System who reach retirement age and who have complied with the rules and regulations as prescribed by statute and by the retirement board. There are two main sources of revenue provided for, one, deductions made from salaries of members which are determined by actuarial tables (N. Y. City Adm. Code, § B20–20.0) and the other, monthly payments by the city in an amount fixed by the retirement board. (§ B20–26.0.) Provision is made that upon the resignation or transfer of an employee, membership in the association ceases and " he shall be paid forthwith the full amount of the accumulated deductions standing to the credit of his individual account in the annuity savings fund." (§ B20–38.0.) Similar provision is made in the event a contributor is dismissed. " Accumulated deductions " are defined as the total of the amounts deducted from the salary of a contributor and standing to the credit of his individual account in the annuity savings fund, together with the regular interest thereon. (§ B20–1.0.) Regular interest is stated to be interest at four per cent per annum compounded annually. (§ B20–1.0.) Upon the death of a contributor before retirement, as in the case at bar, the statute prescribes that " there shall be paid to his estate or to such person as he shall have nominated by written designation duly executed and filed with the retirement board 1. His accumulated deductions; and, in addition thereto," 2. A sum payable out of one of the reserve funds dependent upon the employment status of the contributor, the amount being determined by the length of service. (§ B20–40.0.)

Further provision is made for exempting the fund from tax, execution, etc., as follows: " The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions,

the pension, annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this title, and the moneys in the various funds provided for by this title, *are hereby exempt from any state* or municipal tax, and exempt from levy and sale, garnishment, attachment or any other process whatsoever, and *shall be unassignable except as in this title specifically otherwise provided."* (§ B20–48.0, italics mine.) The System is made subject to the supervision of the Department of Insurance in accordance with the provisions of sections 39 and 45 of the Insurance Law " so far as the same are applicable thereto, and are not inconsistent with the provisions of this title." (§ B20–49.0.) In the absence of legislation exempting the " accumulated deductions " from the provision of our estate tax the imposition of such tax would be mandatory. (Tax Law, § 249-r.) There are three legislative enactments which it is contended are effective to establish such exemption. The first of these is section B20–48.0 of the Administrative Code of the City of New York above quoted. Prior to the revision of the Tax Law in 1930, there were two adjudications by our courts which held that under the old transfer tax law the funds so paid, whether to the contributor's estate or to a designated beneficiary, were exempt solely by virtue of the exemption provision then contained in the Greater New York Charter. (§ 1092, subd. w: *Matter of Morrison,* 130 Misc. 438; *Matter of Fischer,* 132 id. 204; affd.. 223 App. Div. 887.) In both of said cases the decedent was likewise a member of the Teachers' Retirement System of the City of New York. In both cases it was held that the provisions of the city charter were effective to confer a special exemption upon recipients of the fund. Prior to 1930, and at the time the aforementioned decisions were rendered, the pertinent provisions of the transfer tax law were not inconsistent with the exemption provision of the city charter. In revising the Tax Law in 1930, however (Laws of 1930, chap. 710), the Commission recommended and the Legislature enacted as part of the new estate tax law, section 249-kk of article 10-C of the Tax Law, which reads as follows: " No exemption provided for in any other article of this chapter or *any other law of this State* shall be construed as being applicable in any manner under this article." (Italics mine.) This section is stated to have been derived from section 244 of the Tax Law, which read as follows: " The exemptions enumerated in section four of this chapter shall not be construed as being applicable in any manner to the provisions of this article." The effect of this change in the law has been held to repeal by implication the exemption provisions contained in the city charter. (*Matter of O'Donnell,*

153 Misc. 480; *Matter of Waite*, N. Y. L. J. Jan. 22, 1934, p. 347 [not officially reported].) Although the facts are not given in full, apparently the decedent in the *O'Donnell* case was an ordinary employee of the city of New York as distinguished from one of the special groups. A comparison, however, of the analogous exemption provisions applicable to ordinary city employees with those pertaining to teachers shows that they are substantially the same. The fund, which was the subject of taxation in the *O'Donnell* case, was paid to the decedent's executor and not to a designated beneficiary. In concluding that the fund so paid was a taxable asset, the learned surrogate relied entirely upon the effect of the later re-enactment of section 249-kk as a repeal by implication of the exemption provision of the city charter. Surrogate FOLEY, in *Matter of Waite* (*supra*), also held that the prohibition of section 249-kk against the exemption created under "any other law of this State" applied to the then existing exemption contained in the city charter, and that such statutory prohibition required a determination contrary to that reached in *Matter of Fischer* (*supra*).

Even though the Administrative Code was "re-enacted in 1937 and, therefore, subsequent to the enactment of section 249-kk of the Tax Law, effective September 1, 1930, by reason of the peculiar provisions of the Code the effect is the same as though the exemption provision of the Code had been enacted prior to 1930. Section 982-6.0 prohibits repeal by implication of any existing provision of law and further provides that "no law shall be deemed repealed thereby unless expressly provided for herein." Any doubt as to the intent of the Legislature is dispelled by a reading of section 983-1.0 which provides in part as follows:

" a. Every provision of the code shall be considered a new enactment effective January first, nineteen hundred thirty-eight, except as provided in this section.

" b. For the purpose of determining the effect of any statute, heretofore enacted and not specifically repealed by this act, upon any provision of the code, such provision shall not be considered a new enactment, if it reenacts any prior law, but shall be construed to be a reenactment and continuation of the last amendment of the law so reenacted."

The present exemption provision of the Code is substantially the same as subdivision W of section 1092 of the Greater New York Charter, as amended in 1917. The effect, therefore, of these sections of the Code is that section 249-kk remains the latest expression of the legislative will and thereby repeals by implication the exemption provision of the Code. (*Matter of Washington St. A. & P. R. R. Co.*, 115 N. Y. 442; *Matter of Tiffany*, 179 id. 455; *Matter of O'Donnell*, *supra*.)

*Second,* it is contended that the provisions of subdivision 7 of section 200 of the Insurance Law (as amd. Laws of 1940, chap. 525, effective April 15, 1940) are applicable to all retirement systems in the State, and being a later legislative enactment they supersede the inconsistent provision of the Tax Law. Subdivision 7 reads as follows: " The property of a retirement system, the portion of wages or salary of an employee deducted or to be deducted, the right of an employee to a pension benefit, and all his rights in the funds of the system, shall be exempt from taxation and from the operation of any law relating to bankruptcy or insolvency, except as provided in subsection eight and subject to the provisions of section one hundred sixty-six."

As above stated, the Teachers' Retirement System of the City of New York is a creature of special legislation. The present city code establishes the System and prescribes rules and regulations for the complete operation thereof without resorting to general legislation, except as therein specifically provided. Since the city code contains its own special exemption provision, the familiar rule of statutory construction would dictate its exclusive applicability as distinguished from resorting to analogous provisions of a general statute. Furthermore a reading of the other subdivisions of this section indicates a clear intent on the part of the Legislature to restrict its application to retirement systems created and existing under and pursuant to the provisions of the Insurance Law. It is a fundamental rule of statutory construction that all parts of a statute are to be read and construed together. The following statement in *Hayden* v. *Pierce* (144 N. Y. 512, 516) is particularly pertinent: " Language, however strong, must yield to what appears to be the intention, and that is to be found, not in the words of the particular section alone, but by comparing it with other parts or provisions of the general scheme of which it is a part."

The third statute cited as authority for declaring an exemption is section 70 of the Civil Service Law, which reads as follows: " The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this article and the moneys in the various funds created under this chapter, are hereby exempt from any State or municipal tax, including transfer or inheritance tax, and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this article specifically provided." (Added Laws of 1920, chap. 741, § 1; amd. Laws of 1927, chap. 578, § 7, in effect April 4, 1927.)

In addition to the objections hereinabove stated with respect to the applicability of section 200 of the Insurance Law, this section is expressly restricted in its application to " * * * any other right accrued or accruing to any person *under the provisions of this article* and the moneys in the various funds *created under this chapter* * * *." (Italics mine.) In view of this express limitation the contention of the appellant as to the applicability of this section to the facts of the case is clearly untenable. My conclusion is not necessarily at variance with the opinion of the Attorney-General as expressed in his report for the year 1938 (Opinions of Attorney-General [1938], p. 184) that funds received by an executor or administrator of a deceased State employee from the *State Employees' Retirement System* are not taxable under the provisions of article 10-C of the Tax Law. The Attorney-General based his conclusion upon the history of the pertinent legislation, pointing out that section 249-kk of the Tax Law is identical in language with former section 249-i of article 10-B of the Tax Law as enacted by chapter 320 of the Laws of 1925, and amended by chapter 365 of the Laws of 1926, effective April 15, 1926. He then reasons that section 70 of the Civil Service Law having been amended by chapter 578 of the Laws of 1927, for the express and specific purpose of exempting payments made by the State Employees' Retirement System from transfer or inheritance tax, and it being a later expression of the legislative will, supersedes and nullifies the effect of section 249-kk of the Tax Law. The situation presented to the Attorney-General is distinguishable, however, from the case at bar in that there the deceased employee was a member of the State Retirement System, which is created under and is governed by the provisions of article 4 of the Civil Service Law of which section 70 is a part. The familiar rule of statutory construction, as above outlined, clearly dictates the conclusion reached by the Attorney-General that as to the State Retirement System section 70 supersedes the inconsistent provision of the Tax Law. As hereinabove indicated, however, the same conclusion cannot be reached with respect to the exemption provision contained in the city code, in that said provision is a mere re-enactment, and is derived from the city charter, as amended in 1917, and, therefore, antedates the original enactment of section 249-i of article 10-B of the old Tax Law.

It follows from the foregoing that the " accumulated deductions " are in my opinion taxable unless an exemption can be found in the Tax Law itself. It is conceded that there is no express exemption, but it is urged that the retirement fund is similar in many respects to life insurance, and it being payable to a designated beneficiary, is entitled to the same exemption as life insur-

ance so payable. (Tax Law, § 249-r, subd. 9; § 249-q, subd. c.) There have been two decisions determining this question, one in the State courts and one in the Federal, and each reaching a different conclusion. In *Matter of Fitzsimmons* (158 Misc. 789; affd., 248 App. Div. 862 [First Dept.]; leave to appeal to Court of Appeals denied, 249 id 728), decided in 1937, the facts were identical with those in the case at bar. In that case, as in this, the decedent was a member of the Teachers' Retirement System of the City of New York, and having died prior to her retirement, the entire fund to her credit was paid to her designated beneficiary. Surrogate FOLEY reviewed the rules and regulations of the System and concluded there was sufficient similarity between its operation and that of a life insurance company to hold that such fund payable to the designated beneficiary was exempt from tax to the same extent as life insurance so payable.

In *Matter of Kernochan* v. *United States* (29 F. Supp. 860; writ of certiorari denied, 309 U. S. 675), decided by the Court of Claims in 1939, the executor named in the will of the late Judge Kernochan sought to recover an inheritance tax paid the Federal government on " accumulated deductions " standing to his credit as an employee of the city of New York and a member of the retirement system and which funds had been paid to his widow, whom he had designated as his beneficiary in the manner prescribed by statute. In disallowing the claim and dismissing the petition, the court treated the fund paid the beneficiary as divisible into two parts, the amount paid by the System being treated as life insurance, and hence exempt up to $40,000, and the " accumulated deductions," not being regarded as insurance, and, therefore, held to be taxable as a transfer made by decedent to take effect at or after death, within the meaning and application of section 302 (c) of the Revenue Act of 1926 (as amd. U. S. Code, tit. 26, § 811 [c]). Section 302 (c) is comparable to subdivision 3 of section 249-r of our Tax Law. As is stated in *Matter of Kernochan*, the learned surrogate in *Matter of Fitzsimmons* was not called upon to pass upon the distinction to be made between the accumulated salary deductions and the contributions made by the city.

As this question has been squarely presented herein, it becomes necessary to determine whether such accumulated salary deductions are insurance or in the nature of annuities. In *Matter of Sothern* (257 App. Div. 574, affg. 170 Misc. 805) the court describes an annuity as a provision for life with no indemnity feature, and a contract of insurance as a provision against death. In *Helvering* v. *Le Gierse* (312 U. S. 531) it was stated that insurance involved risk shifting and risk distributing; that insurance was designed

to shift the risk of premature death of the one upon whom the beneficiaries were dependent for support. The distinction between insurance and an annuity was succinctly stated at page 541 of said opinion, which reads in part as follows: " The fact remains that annuity and insurance are opposites * * *. From the company's viewpoint, insurance looks to longevity, annuity to transiency."

In the case at bar, such accumulated salary deductions possess, in my opinion, none of the basic characteristics of insurance. There is no risk shifting nor risk distributing. There is no provision against death, the amount of the payment being in no manner contingent upon death, either the employee or his estate or the designee named being entitled to payment of the entire amount of such deductions with interest. The agreement between decedent and the System with respect to such salary deductions, therefore, resembles more closely an annuity than an insurance contract and constitutes an investment risk rather than an insurance risk.

A judicial determination of the issues presented requires a consideration of the purpose and object sought to be obtained by the enactment of our present estate tax law as enunciated in the decisions of the Federal courts as well as the courts of this State. In enacting the new estate tax law, the Legislature sought to conform our Tax Law to that of the Federal authorities. In so doing, our courts have indicated that for the purpose of maintaining uniformity of administration of the Tax Law, the effect of the provisions of the Federal statutes as adopted by the Federal courts should be followed by the State courts in construing similar provisions of our statutes. (*Matter of Weiden*, 263 N. Y. 107; *Matter of Cregan*, 275 id. 337; *Matter of Pratt*, 262 App. Div. 240 [2d Dept.].) It is argued, however, that the *Kernochan* decision was rendered by a Federal court of original jurisdiction, and being in conflict with the determination of an appellate court of this State (*Matter of Fitzsimmons, supra*), this court is not bound to follow *Matter of Kernochan* v. *United States (supra.) (Matter of Hard*, 261 App. Div. 192 [2d Dept.]; *Matter of Pratt. supra.)* As hereinabove indicated, however, a writ of certiorari was denied in the *Kernochan* case (*supra*), and in *Helvering* v. *Le Gierse (supra)*, the *Kernochan* case was cited with approval. Under these circumstances, I am constrained to follow the *Kernochan* case, and hold that the portion of the fund in question constituting such " accumulated salary deductions " is not life insurance within the meaning of the provisions of subdivision 9 of section 249-r of the Tax Law and is, therefore, taxable as a transfer made by decedent in contemplation of or intended to take effect in possession or enjoyment at or after

death within the purview of subdivision 3 of section 249-r of the Tax Law.

In view of the analysis and conclusions reached with respect to the applicability of the various statutes hereinabove reviewed, my decision is not to be construed as having any application to the retirement systems created under such other statutes.

The *pro forma* order made and filed herein on April 15, 1941, is affirmed.

Settle order accordingly.