[S. F. No. 18931.   In Bank.   Oct. 21, 1955.]

Estate of IDA ANNA RICHARTZ, Deceased.   ROBERT C. KIRKWOOD, as State Controller, etc., Appellant, v. MARGARET KELLY, Respondent.

James W. Hickey, Charles J. Barry and John D. O'Hara for Appellant.

Graham & Morse and Francis L. Tetreault for Respondent.

SPENCE, J.—The State Controller appeals from an "Order Sustaining Objections to Report of Inheritance Tax Appraiser and Fixing Inheritance Tax," which order had exempted certain death benefits paid to respondent by the San Francisco and State of California Retirement Systems. Government Code, section 31452, exempts such payments from property taxation but not from the state inheritance tax. (*Estate of Simpson*, 43 Cal.2d 594 [275 P.2d 467].) The question now presented is whether such payments, as respondent claims, constitute proceeds from an "insurance policy" (Rev. & Tax. Code, § 13721[1]) and are therefore exempt from the inheritance tax (Rev. & Tax. Code, §§ 13723-13724[2]). Appellant challenges the propriety of the order exempting such payments and, in our opinion, his position must be sustained.

The appeal is presented on an agreed statement. The deceased, a teacher, died during her term of active service. Respondent, her sister and designated beneficiary, thereupon was paid $8,048.55 by the San Francisco Teachers' Retirement Fund and $846.50 by the State Retirement Fund. The $8,048.55 consisted of the amount earnable by the decedent during the six months immediately preceding her death ($3,157.00), plus the amount of her contributions to the

[1]Section 13721: "Insurance policy," as used in this article, means a life or accident insurance policy the proceeds of which are payable by reason of the death of the insured.

[2]Section 13723: Except to the extent specified in section 13724, the payment or right to receive payment of the proceeds of either of the following insurance policies is a transfer subject to this part:

(a) Any insurance policy issued after June 25, 1935, which is payable to a named beneficiary.

(b) Any insurance policy issued on or before June 25, 1935, which is payable to a named beneficiary and under which the insured has the right to change the beneficiary or has the right of cash surrender.

Section 13724: In addition to the exemptions allowed by this part, the payment or right to receive payment of fifty thousand dollars ($50,000) of the proceeds of either of the insurance policies mentioned in section 13723 is not subject to this part, with the following limitations:

(a) Where there is more than one policy, whether of the same or a different type, only fifty thousand dollars ($50,000) of the aggregate proceeds is not subject to this part.

(b) Where there is more than one beneficiary, the fifty thousand dollars ($50,000) shall be prorated among the beneficiaries in proportion to the amount of insurance payable to each.

fund with accrued interest ($4,891.55); and was paid pursuant to section 165.2(e) of the Charter of the City and County of San Francisco.[3] The parties agree that, for the purpose of the question here involved, the $846.50 received from the State Retirement Fund should be treated in the same manner as that part of the local retirement payment which represents contributions of the decedent.

The primary purpose of the retirement systems was unquestionably to provide for an annuity to the employee upon retirement. However, the San Francisco system did provide for a death benefit as above noted. In this connection, the parties stipulated in the agreed statement that ''The portion of the San Francisco death benefit consisting of the equivalent of six months' compensation becomes payable immediately a teacher becomes a member of the system.'' It was further stipulated that ''The San Francisco Teachers' Retirement Fund is supported one-half from tax revenues and one-half by contributions by the members. The amount of the respective contributions are adjusted from time to time as actuarial computations dictate to maintain the fund in solvent condition to meet all future liabilities as actuarially computed.''

Thus, the death benefit proper was payable in the event that an employee might die shortly after entering the service, and the manner of adjusting the retirement fund contributions in accordance with actuarial computations suggests that there were elements of risk-shifting and risk-distribution similar to those involved in ''insurance.'' (See *Estate of Barr*, 104 Cal.App.2d 506, 508-509 [231 P.2d 876].) But the question remains as to whether the death benefit payments constituted the ''proceeds'' of an ''insurance policy'' within the meaning of the exemption statute. (Rev. & Tax. Code, §§ 13721, 13723-13724.)

Words in a statute should be given their ordinary meaning unless otherwise clearly intended or indicated. (*County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 642 [122 P.2d 526].) The Legislature has defined a policy of insurance to be ''the written instrument in which a contract of insurance is set forth.'' (Ins. Code, § 380.) It is

---

[3] ''If a member [of the retirement system] shall die before retirement, regardless of cause, a death benefit shall be paid to his estate, or designated beneficiary, consisting of the compensation earnable by him during the six months immediately preceding death, plus his contributions [to the retirement system] and interest credited thereon.''

commonly understood to be the formal written document expressing the consideration, the terms and stipulations as negotiated between the parties in final settlement of the respective obligations of the insurer and the insured. (Words and Phrases, vol. 32, p. 793; 44 C.J.S. "Insurance," § 1, p. 471 et seq.) But no such written instrument is involved here. Rather, it appears that the deceased, without the exercise of choice or the right to specify any conditions, automatically became a member of the respective retirement systems. There was no determination of fixed terms of insurance as usually found in an insurance policy, but on the contrary, the terms were subject to modification, within reasonable limits, by only one party to the retirement plan— that is, the public body. (*Packer* v. *Board of Retirement*, 35 Cal.2d 212, 214, 218-219 [217 P.2d 660]; also *Kern* v. *City of Long Beach*, 29 Cal.2d 848, 855 [179 P.2d 799]; *Wallace* v. *City of Fresno*, 42 Cal.2d 180, 183 [265 P.2d 884].)

■ Regardless of the rule of strict construction in determining an alleged claim of exemption from a general tax statute (*Estate of Simpson, supra,* 43 Cal.2d 594, 597), it is clear that by no process of reasoning can it be said that an "insurance policy" issued here. Accordingly, the death benefits would not qualify as proceeds of an "insurance policy" to sustain their exemption from the state inheritance tax.

Respondent cites the case of *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770 [241 P.2d 635], where the rights of a previously divorced widow to death benefits as designated beneficiary under the California State Employees' Retirement System were likened to similar rights prevailing under an insurance policy. That case did not concern inheritance taxation, and its general reference to insurance principles in solution of a totally different problem has no bearing on the precise meaning of the terms of exemption used by the Legislature for purposes of the state inheritance tax. Nor are the New York cases cited by respondent—*In re O'Donnell's Estate,* 153 Misc. 480 [275 N.Y.S. 445], and *In re Fitzsimmons' Estate,* 158 Misc. 789 [287 N.Y.S. 171]— in point. While those cases held that death benefits paid under the New York City retirement plan were in the "nature of insurance," they were not dealing with a statute limiting the exemption to proceeds from an "insurance policy." Later New York cases have classified death benefits received under their retirement system as "insurance" payments within the wording of their exemption statute but have distinguished

the accumulated salary deductions representing the deceased employee's contributions, plus interest, as without the exemption. (*In re Newton's Estate*, 177 Misc. 877 [32 N.Y.S.2d 473]; *In re Burtman's Estate*, 180 Misc. 299 [41 N.Y.S.2d 778].) This distinction manifestly has no bearing under the precise limitation of our statute in exempting "proceeds" of an "insurance policy." If it is deemed desirable to exempt from inheritance tax such payments as were made here under city and state retirement plans, the Legislature should so provide in unmistakably clear language.

The order is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.